Genaro QUILES–QUILES,
Plaintiff, Appellant,

v.

William J. HENDERSON, Postmaster
General, United States Postal
Service, Defendant, Appellee.

No. 05–1591.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 2005.

Decided Feb. 21, 2006.

José F. Quetglas Jordán with whom Quetglas Law Offices was on brief, for appellant.

Stephen J. Boardman, Counsel of Record, with whom H.S. García, United States Attorney, Fidel A. Sevillano–Del Río, Assistant United States Attorney, Lori J. Dym, Chief Counsel and David S. Friedman, United States Postal Service, were on brief, for appellee.

Before TORRUELLA, LIPEZ, and HOWARD Circuit Judges.

HOWARD, Circuit Judge.

This appeal arises from a civil action under the Rehabilitation Act brought against the Postmaster General of the United States by Genaro Quiles–Quiles, a former postal employee. *See* 29 U.S.C. § 791 *et seq.* Quiles alleges that his Postal Service supervisors harassed him because of his disability and retaliated against him when he complained about the harassment. A jury found for Quiles on both claims and awarded him $950,000 in compensatory damages, which the district court reduced to the statutory cap of $300,000. *See* 42 U.S.C. § 1981a(a)(2). The Postmaster General filed a post-trial motion for judgment as a matter of law, which the district court allowed. We reverse and reinstate the verdict in the statutorily-capped amount.

## I.

The jury could have found the following facts. Quiles began his employment for the Postal Service in 1986 as a mail carrier. In 1995, he was assigned to the Bayamon Gardens station where he worked as a window cashier. Among his duties, he sold stamps and other postal products. His immediate supervisor was Doris Vazquez, who served under Virgilio Lopez. Luther Alston was the station manager.

Soon after Quiles moved to Bayamon Gardens station, Vazquez began to bother him. Vazquez frequently interfered with Quiles' running his window, dealing with customers, and handling the cash drawer money. This conduct made Quiles "anxious and nervous" because he was afraid that he would be held responsible for any accounting errors. Quiles complained to Lopez, who did nothing to stop the interference.

On October 4, 1997, Vazquez screamed at Quiles because he had gone to lunch "without authorization." The incident took place in front of several employees and customers. Immediately thereafter, Quiles suffered a panic attack and sought psychiatric help for anxiety and depression. Quiles missed three days of work because of his distress. When Quiles returned, he presented to Lopez a certificate from his psychiatrist stating that the absence was medically necessary.

After Quiles returned to work, Vazquez interrupted his work more frequently. Quiles complained on several occasions, but neither Lopez nor Alston intervened. On March 5, 1998, Quiles was crossing the street outside the post office when (so the jury could have found) Vazquez drove at him in her truck. Quiles reported the incident to his supervisors and the police. Afterwards, Quiles entered a state of "acute anxiety."

As a result of Quiles' worsening mental condition, his psychiatrist prescribed a week-long leave of absence and recommended that he be reassigned from his cashier duties after returning to work. Quiles brought Lopez a sealed envelope containing the medical certificate referencing this information. Lopez opened the envelope, read the medical certificate, and brought it to Vazquez. Vazquez read the

certificate and laughingly exclaimed, "He is crazy!" Lopez laughed as well. When Quiles informed Alston of the incident, Alston told Quiles to "stop acting."

From this point forward, Vazquez and Lopez called Quiles "crazy" on a daily basis. They also constantly "joked" in front of coworkers and customers about the fact that Quiles saw a psychiatrist and took medication for his condition. This commentary included remarks about the effect that the medication had on Quiles' ability to have sexual relations with his wife. In addition, Lopez often remarked that Quiles posed a "great risk" to the other employees because he was under ongoing psychiatric treatment. Alston frequently stated that Quiles was a "risk to the floor" because he was undergoing psychiatric treatment. And Vazquez remarked several times a day that Quiles should "not be working" in the post office because he was "crazy."

On April 14, 1998, Quiles filed a complaint with the Equal Employment Office of the Postal Service, claiming that Vazquez, Lopez, and Alston had harassed him because of his mental disability. Through the remainder of 1998 and 1999, the harassment and derogatory comments continued. Two weeks after Quiles filed his EEO complaint, Alston threw Quiles out of his office, screamed at him, and slammed the door as Quiles was leaving. Several weeks later, Lopez stopped a union grievance meeting between Quiles and a shop steward and shouted at Quiles in front of coworkers. Alston approached Quiles in the bathroom and told him that he would "soon be without a job," called Quiles a "punk," challenged Quiles to a fight, and grabbed his (own) crotch while calling Quiles a "coward."

Quiles' mental condition deteriorated. On March 31, 2000, Quiles' psychiatrist found him totally disabled because of severe depression, and Quiles began a leave of absence. Quiles was hospitalized for several days during this period to treat his depression. A year later, Quiles returned to his position because of financial need. He worked until August 14, 2003, when Vazquez again called him "crazy." This triggered a relapse of Quiles' depression and required another hospitalization. He has since been totally disabled.

Following the close of evidence, the Postmaster General moved for judgment as a matter of law. *See* Fed.R.Civ.P. 50(a). The district court denied the motion and submitted the case to the jury. After the jury returned a verdict for Quiles, the district court allowed the Postmaster General's renewed motion for judgment as a matter of law, *see* Fed.R.Civ.P. 50(b), and entered judgment against Quiles. *See Quiles–Quiles v. Herndon*, No. 99–cv–01868 (D.P.R. Mar. 22, 2005) (Dist.Ct.Op.). The court rejected the jury's disability-harassment finding because Quiles had not demonstrated that he was disabled. *Id.* at 8–11. The court also rejected the jury's retaliation finding because Quiles had failed to prove either that he was subjected to a hostile work environment, or that any harassment he suffered was causally related to his filing of an EEO complaint. *Id.* at 11–13.

## II.

■ We review the ruling on a motion for judgment as a matter of law de novo. *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 393 (1st Cir.2002). Our review is "weighted toward preservation of the jury verdict" because a verdict should be set aside only if the jury failed to reach the *only* result permitted by the evidence. *Id.*

As a Postal Service employee, Quiles' claim arises under the Rehabilitation Act, not the Americans with Disabilities Act

(ADA). *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir.2005). Nevertheless, the liability standards are the same under each statute. *See* 29 U.S.C. § 791(g); *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 11 n. 1 (1st Cir.2004). Therefore, "the caselaw construing the ADA generally pertains equally to claims under the Rehabilitation Act." *Calero–Cerezo*, 355 F.3d at 19.

## A. Disability Harassment

The district court instructed the jury that, to succeed on a claim of disability harassment, Quiles had to prove that he was (1) disabled, (2) that he was subjected to a hostile environment, and (3) that the hostility was directed at him because of his disability.[1] The Postmaster General has not challenged this instruction either below or on appeal; therefore, it provides the standard against which we measure the sufficiency of the evidence. *See Rodriguez–Torres v. Caribbean Forms Mfr.*, 399 F.3d 52, 58 (1st Cir.2005).

In its post-trial ruling, the district court rejected Quiles' disability-harassment claim because Quiles had failed to adduce sufficient evidence to ground a finding that he was disabled. The Postmaster General defends the district court's ruling by arguing that Quiles not only failed to establish

he was disabled, but also that he failed to introduce sufficient evidence of either a hostile environment or discriminatory animus on the part of his harassers. *See McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 298 n. 3 (1st Cir.1998) (stating that the court of appeals may affirm a judgment as a matter of law on any ground supported by the record). We begin by considering whether the evidence was sufficient for the jury to conclude that Quiles was disabled.

■ An individual is disabled if he (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. *See Calero–Cerezo*, 355 F.3d at 20. Quiles contends that the evidence was adequate for the jury to find him disabled under any of these three recognized liability theories. We proceed directly to the third category.

■ Quiles argues that the Postal Service regarded him as disabled because his supervisors perceived his mental impairment as substantially limiting his ability to engage in the major life activity of working.[2] The Postmaster General responds that Quiles failed to show, as he must, that his supervisors perceived him as unable to

---

1. Although we have not had occasion to evaluate disability harassment as a viable theory of recovery, we have assumed that it is viable. *See Arrieta–Colon v. Wal–Mart Puerto Rico, Inc.*, 434 F.3d 75, 88 (1st Cir.2006) (affirming disability harassment verdict where the defendant did not challenge the viability of a disability-harassment claim). Where it has been challenged, the theory has survived. *See Silk v. Chicago*, 194 F.3d 788, 803–04 (7th Cir. 1999) (noting that "[m]ost circuits have assumed" such a cause of action to lie; *see also Soledad v. Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir.2002) (recognizing hostile work environment theory for Rehabilitation Act claim); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir.2001) (explicitly recognizing

hostile work environment theory under the ADA). Indeed, the Postmaster General has not challenged Quiles' theory of recovery.

2. Following the Supreme Court's lead, *see Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), we have assumed in prior cases that working is a major life activity. *See, e.g., Guzman–Rosario v. United Parcel Serv.*, 397 F.3d 6, 11 (1st Cir.2005). We continue to do so here because the Postmaster General did not object below or on appeal to the district court's instruction that working is a major life activity, and the instruction was not plainly wrong.

work in a broad class of jobs. *See Sullivan v. Neiman Marcus, Group Inc.*, 358 F.3d 110, 117 (1st Cir.2004). The district court accepted the Postmaster General's reasoning, *see* Dist. Ct. Op. at 10, but we disagree.

The purpose of protecting those who are regarded as disabled from discrimination is to prohibit employers from relying on "stereotypic assumptions not truly indicative of individual ability." *See Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *see also Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("By amending [the Rehabilitation Act] to include those ... who are regarded as impaired ... Congress acknowledged that society's accumulated myths and fears about disability ... are as handicapping as are the physical limitations that flow from actual impairment."). One way for an employee to prove that his employer regarded him as disabled is to demonstrate that the employer mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities. *See Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *Bailey v. Georgia–Pacific Corp.*, 306 F.3d 1162, 1169 (1st Cir.2002).

There was evidence that Quiles' supervisors believed, without foundation, that his mental impairment made him a potential safety risk to his coworkers. Lopez stated "on several occasions" that, because Quiles was under "psychiatric treatment," he was "a risk to the security ... of the Post Office."[3] Alston stated "on several occasions" that Quiles was "a risk to the floor because [he] was under psychiatric treatment." Similarly, Vazquez called Quiles "crazy" "five, six, seven times a day" and told him that he "should not be working" at the post office.

These comments indicate that Quiles' supervisors perceived him to be potentially violent because of his mental impairment. The belief that the mentally ill are disproportionately dangerous is precisely the type of discriminatory myth that the Rehabilitation Act and ADA were intended to confront. *See* Michael Perlin, *The ADA & Persons with Mental Disabilities: Can Sanist Attitudes Be Undone?*, 8 J.L. & Health 15, 27 (1994) ("A series of behavioral myths has emerged suggesting that persons with mental disabilities are ... disproportionately dangerous...."). In enacting the ADA, Congress established a defense to liability if the employee is a "direct threat" to the safety of others. 42 U.S.C. § 12113(b); *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002). But the accompanying legislative history emphasizes that "[t]he determination that an individual with a [mental] disability will pose a safety threat to others must be made on a case-by-case basis and must not be based on generalizations, misperceptions, ignorances, irrational fears, patronizing attitudes, or pernicious mythologies." H. Rep. No. 101–485(II), 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 303, 338; *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 569, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

The supervisors' remarks also suggest a shared belief that Quiles was substantially limited in the major life activity of working because of his impairment. If Quiles' disability truly made him a safety risk to coworkers it would preclude him from holding most jobs in our economy.[4] *See*

---

**3.** In considering the "regarded as disabled" issue, the district court erroneously stated that there was only a single remark by a supervisor that Quiles was a safety risk. *See* Dist. Ct. Op. at 10.

**4.** The district court concluded that, despite the comments that Quiles was potentially vio-

*Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1132–35 (10th Cir.2003) (concluding that a jury could find that employer erroneously regarded its employee as substantially limited in the major life activity of working where the employer erroneously believed that the employee's depression made her a danger to her co-workers). The evidence therefore was sufficient for the jury to conclude that the Postal Service regarded Quiles as disabled because his superiors erroneously believed that he was unable to perform a broad class of jobs due to his mental impairment.

■ We turn next to the Postmaster General's first alternative argument for affirmance: Quiles failed to adduce sufficient evidence that he was forced to endure a hostile work environment. The Postmaster General acknowledges that Quiles was subject to daily ridicule about his mental impairment. He contends, however, that this sort of conduct is common in blue-collar workplaces such as a post office, and that conduct of this sort, while inappropriate, does not constitute a hostile work environment.

■ To establish a hostile work environment, Quiles had to show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Mannie*, 394 F.3d at 982 (applying "severe and pervasive" standard in disability harassment case under the Rehabilitation Act). Among the factors rele-

vant to this inquiry are the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367.

There was testimony that Quiles was subject to such constant ridicule about his mental impairment that it required him to be hospitalized and eventually to withdraw from the workforce. This evidence was, in our view, sufficient for a reasonable jury to find a hostile work environment. *See, e.g., Arrieta–Colon*, 434 F.3d at 88 (affirming disability harassment verdict where the evidence showed that the plaintiff was subject to "constant mockery" due to his disability); *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir.2002) (similar); *see also O'Rourke v. Providence*, 235 F.3d 713, 735 (1st Cir.2001) (rejecting "blue collar workplace" argument similar to the Postmaster General's).

■ Finally, we consider the Postmaster General's other alternate ground for affirmance: the hostile conduct at issue was not directed at Quiles *because of* his disability. In presenting this argument, the Postmaster General highlights the fact that Vazquez harassed Quiles before she knew of his impairment.

■ The Supreme Court has emphasized that the federal employment discrimination laws do not establish "a general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Rather, an employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a

---

lent, the supervisors did not regard him as unfit for a broad class of jobs because they did not seek to have Quiles fired. But the jury heard evidence about the complex union grievance proceedings and detailed regulations governing employee management in the

Postal Service which made it difficult to fire a postal employee. The jury reasonably could have inferred from this evidence that, instead of pursuing a formal termination, Quiles' supervisors engaged in a course of harassment to force him to relinquish his position.

federal anti-discrimination statute. *See id.* at 80, 118 S.Ct. 998; *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 43 n. 5 (1st Cir.2003).

The Postmaster General correctly posits that some of Vazquez's conduct does not constitute actionable harassment because it occurred before Vazquez knew that Quiles was suffering from depression. But, even discounting this conduct, there was ample proof that Quiles was harassed because of his disability. On March 5, 1998, Quiles brought a medical certificate to Lopez identifying his mental impairment. And, for the next two years, Quiles' superiors harassed and ridiculed him relentlessly, frequently mentioning the disability in the course of their actions. This evidence was sufficient to ground the jury's finding that Quiles was discriminated against because of his perceived disability.

### B. Retaliation

■■■ As explained above, the jury also found that Quiles' supervisors retaliated against him after he complained about the harassment. The Rehabilitation Act prohibits retaliation against employees for complaining about violations of the Act. *See* 29 U.S.C. § 791; *Coons v. Sec'y of the Treasury,* 383 F.3d 879, 887 (9th Cir.2004). To prove retaliation, Quiles had to establish that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *See Calero–Cerezo,* 355 F.3d at 25. The adverse employment action requirement may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment. *See Noviello v. Boston,* 398 F.3d 76, 89 (1st Cir.2005); *Gregory v. Daly,* 243 F.3d 687, 701 (2d Cir.2001).

And, in proper circumstances, the causation element may be established by evidence that there was a temporal proximity between the behavior in question and the employee's complaint. *See Noviello,* 398 F.3d at 86.

The district court rejected the retaliation claim on two grounds. It concluded that Quiles did not satisfy the adverse-action requirement because the evidence of a hostile environment was insufficient. Dist. Ct. Op. at 12–13. The court also ruled that, even if Quiles had introduced sufficient proof of a hostile environment, he had failed to show that the hostility was caused by his complaint. *Id.*

■■■ We have already addressed the hostile-environment issue in the disability-harassment discussion, but now consider it as it relates to the retaliation claim. The relevant conduct is that which occurred *after* Quiles complained about his superiors' disability-related harassment. *See Gregory,* 243 F.3d at 701.

There was proof that, within a few weeks of Quiles filing a harassment complaint with the Postal Service's Equal Employment Office, the harassment intensified. Prior to the EEO complaint, the harassment related primarily to comments concerning Quiles' mental impairment. But, after Quiles filed his complaint, the harassment expanded to include, *inter alia,* threats by Alston, screaming tirades directed at Quiles by both Alston and Lopez, and efforts by Lopez to interrupt Quiles' pursuit of a union grievance.

"Subject to some policing at the outer bounds, [the hostile environment question] is . . . to be resolved by the trier of fact on the basis of inferences drawn from a broad array of circumstantial and often conflicting evidence." *Gorski v. N.H. Dep't of Corr.,* 290 F.3d 466, 474 (1st Cir.2002) (quotation marks omitted); *see also Mar-*

*rero*, 304 F.3d at 19. We cannot say on this record that the jury's conclusion that Quiles endured a hostile work environment after he made his EEO complaint was irrational.

We also think that there was sufficient evidence for the jury to have found that the hostile environment was motivated by a desire to retaliate against Quiles. The district court found no evidence of such causation because Quiles did not "even present one stray hearsay remark as to the motivation for these particular supervisors' actions." Dist. Ct. Op. at 13. But there is no requirement for the plaintiff to present such "smoking gun" evidence; circumstantial evidence can suffice. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991). The proof that the intensified harassment commenced shortly after Quiles filed his EEO complaint is sufficient evidence from which the jury could infer causation. *See Gregory*, 243 F.3d at 701 (concluding that retaliation complaint can be based on evidence of intensified harassment); *see also Noviello*, 398 F.3d at 93–94 (holding that evidence of increased hostility after the filing of a Title VII claim was sufficient evidence of retaliation to warrant jury trial).

### III.

Quiles presented sufficient evidence that he was the victim of harassment by his supervisors because of his perceived disability. He also presented sufficient evidence that his supervisors retaliated against him after he complained about their harassment. Accordingly, the district court erred in granting the Postmaster General's motion for judgment as a matter of law.

*Reversed* and *remanded.*