**Glen P. ROLLAND, Plaintiff,**

v.

**U.S. Postmaster General John E. POTTER, Defendant.**

**C.A. 03–30252–MAP.**

United States District Court,
D. Massachusetts.

Sept. 12, 2006.

Karen L. Goodwin, United States Attorney's Office, Thomas J. O'Connor, Jr., Shatz, Schwatz and Fentin, P.C., Springfield, MA, for Defendant.

Mary–Ann L. Lane, Lane Law, Springfield, MA, for Plaintiff.

*MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT* (Docket Nos. 28 & 40)

MICHAEL A. PONSOR, District Judge.

This is an action by an employee of the postal service charging Defendant with

discrimination based on disability.[1] Defendant filed a motion for summary judgment, which was referred to Chief Magistrate Judge Kenneth P. Neiman for Report and Recommendation.

On April 12, 2006 Judge Neiman issued his recommendation, to the effect that the Motion for Summary Judgment should be granted on all counts of the complaint except for Count I insofar as that cause of action could be construed as (1) arising under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–795, and (2) asserting a failure to pay Plaintiff overtime beginning February 4, 2001.

Defendant filed a timely objection to this portion of the Recommendation, arguing that the Motion for Summary Judgment should have been granted on all counts. Except to file a document confirming the timeliness of the complaint, Plaintiff did not object to the Recommendation.

The court will adopt the Report and Recommendation with regard to those claims as to which summary judgment was recommended. Regarding the remaining claim, however, the court will decline to adopt the recommendation and will enter judgment for Defendant on that portion of the complaint as well.

■ A claim under the Rehabilitation Act requires that Plaintiff demonstrate, as a threshold matter, that he is a qualified individual with a disability. "Disability" is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" a "record of such an impairment," or being "regarded as having such an impairment." Americans with Disabilities Act, 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 794(d) (incorporating into the Rehabili-

tation Act standards from the Americans with Disabilities Act of 1990). As the Recommendation notes, Dkt. 40 at 8, Plaintiff did not directly address Defendant's claim that he did not suffer an impairment satisfying this definition. Rather, without citing authority, he simply argued that his eligibility to participate in the Postal Service's Rehabilitation Program (the "Program") constituted sufficient proof of his disability under the Rehabilitation Act.

■ Citing *Simonetti v. Runyon,* 1999 WL 47144 (D.N.J. Jan.29, 1999), the Report and Recommendation found that Plaintiff's enrollment in the program was enough to raise a disputed issue of fact regarding whether he was a qualified individual with a disability.

For two reasons, the court cannot agree that the evidence of Plaintiff's enrollment in the Program is sufficient to generate a disputed issue of fact on the question whether Plaintiff is entitled to assert a claim under the Rehabilitation Act. First, the portion of *Simonetti* appearing to support this contention was, as the Recommendation noted, *dicta.* The underlying facts of that case, *i.e.,* the evidence regarding Plaintiff's actual physical condition, were sufficient even without consideration of his enrollment in the Program to overcome a claim for summary judgment. Second, the discovery in this case, as Defendant's objection to the Report and Recommendation points out, strongly tends to negate, with no substantial contradiction, any claim by Plaintiff that he is, in fact, disabled as the Rehabilitation Act defines that term.

Since Plaintiff has not been able to offer cognizable evidence, viewed in the light most favorable to him, sufficient to justify

---

**1.** The complaint originally listed two defendants, John E. Potter (the Postmaster General) and the United States Postal Service. The lawsuit has been treated however as a claim against Potter, and the court will therefore refer to the defendant in the singular.

a reasonable factfinder in concluding that he can make out one of the essential elements of his claim, summary judgment for Defendant is required.

For the foregoing reasons, upon *de novo* review, the court hereby adopts the Report and Recommendation, in part, but for the reasons stated hereby ALLOWS Defendant's Motion for Summary Judgment (Dkt. No. 28), *in toto*. The clerk is ordered to enter judgment for Defendant on all counts. This case may now be closed.

It is So Ordered.

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT *(Docket No. 28)* April 12, 2006

KENNETH P. NEIMAN, Chief United States Magistrate Judge.

Glen Rolland ("Plaintiff"), an employee at the United States Postal Service's Bulk Mail Center in Springfield, brings this disability discrimination complaint against John Potter, the Postmaster General ("Defendant"), for the Postal Service's alleged failure to provide him sufficient overtime hours. Defendant's motion for summary judgment has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendant's motion be allowed in all but one limited respect. Before reaching the merits of Defendant's motion, however, the court will address a concern, not raised by Defendant, as to whether this action was timely filed. If it turns out that the action

is untimely, the court will recommend that it be dismissed in its entirety.

## I. BACKGROUND

The following facts are taken from Defendant's Local Rule 56.1 Statement of Facts ("Def.'s Facts"). Where disputes exist, the facts are stated in a light most favorable to Plaintiff. *See Douglas v. York County*, 433 F.3d 143, 149 (1st Cir.2005).[2]

In 1994, Plaintiff injured his back while working at the Springfield Bulk Mail Center ("BMC"). (See Def.'s Facts ¶ 5.) Three years later, in accordance with Defendant's Rehabilitation Program, Plaintiff was offered a permanent rehabilitation position as a modified mailhandler. (See *id.* ¶ 6.) In that capacity, Plaintiff's relevant job restrictions were described as follows: "20 lb. Weight Limit; No prolonged sitting (longer than 10 minute-should be allowed to walk anytime it is needed[) ]; no prolonged bending." (*Id.* ¶ 7.) These restrictions have remained essentially unchanged. (*Id.*)

Beginning in January of 2000, Plaintiff began to be supervised by Marc Sales ("Sales"), the manager of distribution operations at the BMC. (*Id.* ¶ 2.) Sales is responsible for determining whether employees should be solicited to work overtime. (*Id.* ¶ 3.) To be solicited for overtime work, an employee is required to sign-up on a sheet indicating whether he or she is willing to work "before tour," "after tour" or "day off" overtime. (*Id.*) During the time-period at issue, Plaintiff indicated that he was available for all three categories. (*Id.*)

**2.** Plaintiff's requests to the contrary, the court has neither "stricken" nor "corrected" Defendant's facts, but has attempted to identify from Plaintiff's various submissions factual disputes which might exist. This has not been easy, given Plaintiff's failure to follow this district's well-established summary judgment procedures. *See* Local Rules of the United States District Court for the District of Massachusetts, L.R. 56.1 ("Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation.").

Generally, employees are solicited to work overtime on a rotating basis in accordance with the sign-up sheet and seniority. (*Id.* ¶ 4.) Employees with physical restrictions, however, are solicited to work overtime only if the work falls within their employment restrictions. (*Id.*) Sales has averred that he is familiar with his employees' medical restrictions and takes them into consideration when determining whom to solicit for overtime work. (See *id.* ¶ 8.)

As it turned out, Plaintiff was solicited for and worked 452 hours of overtime in 2000 and 191 hours of overtime in 2001. (*Id.* ¶ 15.) He claims, however, that he was entitled to much more. (See, *e.g.*, Complaint ¶ 23.) Accordingly, on March 21, 2001, Plaintiff brought an informal complaint to the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Defendant was discriminating against him based on his disability by not allowing him to work sufficient overtime. (Def.'s Facts ¶ 22.) Plaintiff further alleged that his rehabilitation position as a modified mailhandler was not a reasonable accommodation because it did not afford him equal access to overtime. (*Id.*) In 1999, Plaintiff had informally pursued (and then withdrew) a similar EEOC complaint. (*Id.* ¶ 25.)

Plaintiff filed a formal complaint of discrimination with the EEOC on June 14, 2001. (*Id.* ¶ 24.) In it, Plaintiff sought recovery for all overtime that he was "intentionally denied" beginning in April of 2000. (*Id.*) As evidence, Plaintiff submitted a day planner in which he meticulously tallied each and every overtime hour he claims was wrongfully withheld from him and indicated whether the overtime in

question was before tour ("BT"), after tour ("AT") or day off ("DO"). (See *id.* ¶ 16.)

Ultimately, Plaintiff's charge of discrimination was referred to an administrative judge who, it appears, entered judgment in Defendant's favor on September 9, 2002. (*Id.* ¶ 27.) It also appears that a Notice of Final Action was issued on October 10, 2002. (*Id.* ¶ 28.) Those particular dates are addressed more fully below.

Plaintiff filed his complaint with this court on October 27, 2003.[3] He lists three causes of action: violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act") (Count I); violation of the Americans with Disabilities Act ("ADA") (Count II); and retaliation for engaging in protected activity (Count III). In due course, Defendant filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

"Summary judgment is warranted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir.2005) (quoting Fed.R.Civ.P. 56(c)). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Carcieri v. Norton*, 398 F.3d 22, 29 (1st Cir.2005) (citations and further internal quotation marks omitted).

---

**3.** Defendant incorrectly states that Plaintiff's complaint was filed on February 9, 2004. (*Id.*

¶ 28.) That error is immaterial.

## III. DISCUSSION

Initially, the court addresses a statute of limitations concern. Then, assuming the action was timely filed, the court turns to the merits of Defendant's motion.

### A. TIMELINESS

■ Although Defendant does not specifically raise a statute of limitations defense (but see Answer ¶ 33 (denying Plaintiff's allegation that action is timely)), the court suggests that the action may need to be dismissed as untimely. The court addresses this issue *sua sponte*. *Cf. Global Naps, Inc. v. Mass. Dep't of Telecoms. & Energy*, 427 F.3d 34, 41 (1st Cir.2005) (court has "an obligation to inquire *sua sponte* into [its] jurisdiction over the matter") (citations and internal quotation marks omitted); *Acevedo–Villalobos v. Hernandez*, 22 F.3d 384, 385 (1st Cir.1994) (court lacks jurisdiction where appeal is untimely).

Plaintiff concedes that he had ninety days from his receipt of the EEOC's final action to file this lawsuit. (See Pl.'s Brief at 10 (citing 29 C.F.R. § 1614.407 (2006)). See also Complaint ¶ 33.) And there can be no dispute that Plaintiff filed his complaint on October 27, 2003. What is not clear is when exactly the EEOC issued its final action, thus triggering the ninety-day clock.

Plaintiff states in his complaint that "the Agency's decision became final on *July 30, 2002*." (Complaint ¶ 32 (emphasis added)). If that is true, then this action is obviously late. Perhaps the July 30, 2002 date is a typographical error, *e.g.*, Plaintiff meant to write *July 30, 2003*, which would have made this action timely, albeit barely. To that end, Plaintiff also stated in his complaint that he filed an interim administrative appeal (which logically would have had to precede the agency's final decision) in *November of 2002*. (*Id.* ¶ 31.) But then the dates do not comport with the administrative record Defendant has filed. As indicated, Defendant states that an administrative judge granted judgment in Defendant's favor on *September 9, 2002*, and a Notice of Final Action was issued on *October 10, 2002*. Defendant's Exhibit J to his summary judgment motion confirms those dates and nowhere does Defendant mention an interim administrative appeal having been filed in November of 2002. Complicating the matter is Exhibit 8 to Plaintiff's opposition, what appears to be the final page of a Notice of Final Action dated *September 8, 2003*. If that is the measuring date, the action is timely. But since Exhibit 8 suspiciously contains no reference to Plaintiff whatsoever, the court questions its applicability.

At bottom, this court recommends that the action be dismissed in its entirety unless Plaintiff can prove that it was timely filed. *See Collins v. Nuzzo*, 244 F.3d 246, 253 (1st Cir.2001) ("The burden is on the plaintiff to show facts sufficient to take the case out of the statute of limitations."). In the event Plaintiff can make such proof, the court offers the following recommendation as to the merits of Defendant's summary judgment motion.

### B. MERITS

■■ The court begins with three preliminary matters. First, Plaintiff conceded at oral argument that he has no cause of action under Title VII. Second, it is undisputed that Plaintiff "did not raise a claim of unlawful retaliation in either his informal or his formal EEO complaints" (Def.'s Facts ¶ 29), and, thus, he is procedurally barred from pursuing such a claim here, *see Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996) ("the scope of the civil complaint is limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow

out of that charge") (citations and internal quotation marks omitted).[4]  Third, as a Postal Service employee, Plaintiff's disability discrimination cause of action for insufficient overtime hours "arises under the Rehabilitation Act, not the ... ADA." *Quiles–Quiles v. Henderson*, 439 F.3d 1, 4–5 (1st Cir.2006) (citation omitted).  Given these preliminary matters, the court will recommend that Defendant's motion be allowed with respect to Counts II and III (the ADA and retaliation causes of action) and so much of Count I as purportedly arises under Title VII. The court now turns to Plaintiff's Rehabilitation Act claim.

■  Although Plaintiff's ADA claim cannot stand on its own, that statute "generally pertains equally to claims under the Rehabilitation Act." *Quiles–Quiles*, 439 F.3d at 5. (citation and internal quotation marks omitted).  According to the ADA, no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).  The term "qualified individual with a disability" is defined, in pertinent part, as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds."  42 U.S.C. § 12111(8).  "Disability," in turn, is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;  (B) a record of such an impairment;  or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Defendant argues that Plaintiff can prove neither (A), that he has "a physical or mental impairment that substantially limits one or more of [his] major life activities," nor (C)

that he was "regarded as having such an impairment."  Defendant also asserts that Plaintiff cannot prove that he was able to perform the essential functions of his job with or without reasonable accommodation.

Plaintiff does not directly address Defendant's assertions.  Rather, he argues that he "has already been ascertained ... following a lengthy determination process (in which all medical information was exhaustively evaluated), to be permanently partially disabled."  (Pl.'s Brief at 3 (emphasis omitted).)  As support, Plaintiff attaches a portion of the Postal Service's Rehabilitation Program which indicates that "[t]o be eligible for participation," which Plaintiff was, the employee "must have a job-related, permanent partial disability documented by medical evidence."  (Pl.'s Ex. 1 at 259.)  Regrettably, however, Plaintiff cites no caselaw in support of his argument.  Nonetheless, the contours of his position are straightforward: he claims to be *per se* "disabled"—and hence automatically a "qualified individual with a disability"—simply because he was found eligible to participate in the Rehabilitation Program.

Given the uncertainty of the issue, the court will not recommend that he be automatically deemed a "qualified individual with a disability," Plaintiff's argument to the contrary.  For one thing, Plaintiff has not cross-moved for summary judgment on this point.  Moreover, courts have been reluctant to equate "disability" representations made in other contexts to subsequent discrimination claims.  *See, e.g., Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801–03, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (claim of "total disability" in social security proceedings does not automatically bar subsequent ADA claim); *Aldrich v.*

---

4.  In any event, at his deposition, Plaintiff was unable to point to any evidence of retaliation and, in fact, admitted that he was not even

"aware" of his retaliation claim.  (See Def.'s Ex. 1 at 127–28.)

*Boeing Co.,* 146 F.3d 1265, 1268 (10th Cir. 1998) (statements made in company's disability applications or hearings cannot act as bar to later ADA claim).

Still, the court finds the logic of Plaintiff's stance compelling enough for summary judgment purposes and, in this regard, has located at least one case supporting his position, *Simonetti v. Runyon,* 1999 WL 47144 (D.N.J. Jan.29, 1999). There, the plaintiff-postal worker argued that the Postal Service was "estopped from claiming that [he] was not disabled *due to [its] admission of [him] in the Rehabilitation Program and reassignment of [him] to a modified carrier position."* *Id.,* at *3 (emphasis added). After finding that the plaintiff had raised a genuine issue of material fact as to whether he "was substantially limited in the major life activity of lifting," the court noted that an issue of fact "would also most likely lie concerning whether plaintiff was on record as being disabled or whether he was considered by his employer to have suffered from a disability when his employer admitted him to the Postal Service's Rehabilitation Program and reassigned plaintiff to work as a modified carrier." *Id.,* at *5 (citing, *inter alia, Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 144–45 (3rd Cir. 1998)).

In this court's estimation, *Simonetti's* reasoning is applicable here, that is, Plaintiff at least has raised a genuine issue as to whether he is a "qualified individual with a disability" given that he was enrolled in the Postal Service's Rehabilitation Program and then reassigned to a modified mailhandler position. By its own terms, the Rehabilitation Program exists "as a means of facilitating the proper placement and *accommodation* of current employees with permanent *partial* disabilities." (Pl.'s Ex. 1 at 259 (emphasis added).) That

standard parallels the statutory definition at issue here, *i.e.,* whether Plaintiff is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds," 42 U.S.C. § 12111(8).

Moreover, as in *Simonetti,* it is at least arguable that Plaintiff "was on record as being disabled," *see* 42 U.S.C. § 12102(2)(B), and Defendant has not challenged that portion of the statutory definition. Finally, Plaintiff has provided deposition testimony as to how he has difficulty caring for himself, performing manual operations, walking, and working. In other words, Plaintiff appears to have raised a genuine issue, at least for summary judgment purposes, as to whether he is "substantially limited in one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). *See also Clark v. Lincare, Inc.,* 2005 WL 1721213, at *1 (D.Mass. July 21, 2005) (denying summary judgment in ADA claim where "[t]he court cannot say with confidence that the evidence is utterly insufficient to support the plaintiff's claim that he suffered a substantial impairment in his ability to walk and lift").

■ Even so, the court agrees with Defendant that any claim based on insufficient overtime occurring before February 4, 2001, should be barred. As Plaintiff must acknowledge, a federal employee alleging discrimination under the Rehabilitation Act must contact an EEOC counselor within forty-five days of the allegedly discriminatory incident. 29 C.F.R. § 1614.105(a)(1) (2006). *See also Velazquez–Rivera v. Danzig,* 234 F.3d 790, 794 (1st Cir.2000); *Roman–Martinez v. Runyon,* 100 F.3d 213, 216–18 (1st Cir. 1996). "Failure to do so bars [the employee] from bringing a court action based on that incident." *Randall v. Potter,* 366

F.Supp.2d 104, 113 (D.Me.2005) (citing *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990)).

Here, the parties agree that Plaintiff initiated the EEOC process on March 21, 2001. Hence, as Defendant argues, the cut-off date is forty-five days prior to that date, or February 4, 2001. *See Randall,* 366 F.Supp.2d at 113–14 ("To the extent [the plaintiff]'s Complaint concerns discrete acts of alleged discrimination occurring before the cut-off date, they cannot be converted into a single unlawful practice for purposes of timely filing, and thus are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.") (footnote, citation and internal quotation marks omitted). Plaintiff does not challenge these assertions.[5] In short, the court will recommend that Defendant's motion be denied with respect to Count I, but only insofar as that cause of action is construed as a Rehabilitation Act claim alleging Defendant's failure to pay Plaintiff overtime beginning on February 4, 2001.

## IV. CONCLUSION

For the reasons stated, the court recommends that the action be DISMISSED in its entirety unless Plaintiff can prove that it was timely filed. Assuming Plaintiff can make such proof, the court further recommends that Defendant's motion for summary judgment be DENIED with respect to Count I, but only insofar as that cause of action is construed as a Rehabilitation Act claim alleging Defendant's failure to pay Plaintiff overtime beginning on February 4, 2001. In all other respects, the court recommends that Defendant's motion for summary judgment be ALLOWED.[6]

5. Sometimes, a seemingly time-barred plaintiff argues that a defendant's acts of discrimination are not "discrete," but part of a "continuing violation." *See, e.g., id.* (citing *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). Here, however, Plaintiff has not made, and cannot make, such an argument. As Defendant notes, Plaintiff kept a record of each and every discrete instance of allegedly denied overtime, beginning in April of 2000. It is quite easy, therefore, in the instant case to separate the time-barred instances from those which are not.

6. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.