**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EUGENE H. MATHISON,

     Plaintiff - Appellant,

v.

CHRISTOPHER WILSON, D.O.;
RONALD CAMACHO, P.A., M.L.P.;
MARK KELLAR, R.N., Health Services
Admin.; D. ALLRED, D.O., Clinical
Director; GEORGE SANTINI, M.D.; FIVE
JOHN/JANE DOES,

     Defendants - Appellees.

No. 17-1165
(D.C. No. 1:14-CV-03345-RM-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

    Plaintiff Eugene H. Mathison, a federal prisoner proceeding pro se, appeals the

district court's grant of summary judgment dismissing his *Bivens* complaint alleging

the Defendants denied him medical treatment for his knee pain in violation of his

Eighth Amendment rights. All of the Defendants are officials of the United States

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Bureau of Prisons (BOP) at the Federal Prison Camp in Florence, Colorado, where Plaintiff was incarcerated. The district court, adopting the magistrate judge's report and recommendation (R&R), ruled the undisputed evidence demonstrated that the Defendants did not knowingly disregard a substantial risk to Plaintiff's health. We affirm.

I. Background.

We only briefly summarize the medical record, which is accurately set out in the R&R. On December 8, 2011, Plaintiff went to sick call complaining that he had pain and swelling in his left knee for a month. Defendant Ronald Camacho, a physician's assistant, examined Plaintiff and ordered an x-ray. The x-ray report stated Plaintiff had a loss of joint space in the middle of his knee. Camacho and defendant Christopher Wilson, the acting Clinical Director at Florence, treated Plaintiff's knee pain throughout 2012 and 2013. Camacho and Wilson gave Plaintiff steroid or anti-inflammatory injections in his knee in January, April, October, and November of 2012. Plaintiff's knee pain was severe enough that he sometimes could not walk to the chow hall or to church, and was advised not to walk on the outside track or use the exercise machines.

In July 2012, Wilson notified Plaintiff that Florence's Utilization Review Committee (URC) denied Plaintiff a consultation with an orthopedic specialist, but would allow an evaluation by a mid-level provider. Plaintiff's knee pain worsened in October 2012, and Camacho ordered another x-ray. Wilson reviewed the x-ray in November, noting moderate to severe degenerative joint disease. Wilson and

Camacho consistently prescribed Plaintiff Indomethacin, a nonsteroidal, anti-inflammatory drug (NSAID), for his knee from October 2012 until his 2014 release.[1]

At the end of March 2013, Plaintiff wrote to defendant Mark Kellar, Florence's Health Services Administrator, and defendant David Allred, Florence's Clinical Director, to ask why his requests to see an orthopedic surgeon were denied. He stated that he was repeatedly going to sick call for his knee pain, and the steroid injections afforded him only temporary pain relief. Kellar told Plaintiff to continue the sick call procedures, and he, along with defendant George Santini, M.D., examined Plaintiff a week later, on April 4, 2013. They ordered an x-ray, which showed Plaintiff had stable, moderate degenerative joint disease, and they submitted a request for an orthopedic consultation, which the URC approved on April 18, 2013.

Plaintiff was seen by an orthopedic surgeon in private practice in June 2013, who determined Plaintiff had a meniscus tear and arthritis; recommended arthroscopy to repair the tear; and opined Plaintiff would eventually need arthroplasty—knee replacement. In July 2013, Dr. Santini recommended that Plaintiff have an arthroscopy consultation, and he submitted a request to that effect to the URC in September 2013. For unexplained reasons, that request was not acted upon. When Dr. Santini next examined Plaintiff in December 2013, he discovered his request to URC had somehow been discontinued, and he immediately re-submitted the request

---

[1] Plaintiff suggests in his brief that prescribing NSAIDs, including Indomethacin, resulted in low hemoglobin levels and related complications. But as the district court explained, Plaintiff's complaint does not assert an Eighth Amendment deliberate indifference claim based upon the allegedly improper prescription of NSAIDs.

for arthroscopy surgery.  On December 18, 2013, URC referred that request to the BOP Regional Office for final approval.  Plaintiff was released on January 8, 2014, before the surgery was scheduled.  An x-ray in July 2014, showed that Plaintiff had advanced bone-on-bone degeneration in his knee.  Plaintiff had replacement knee surgery in July 2014, after which he was able to walk without assistance.

Plaintiff filed suit against the Defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which "provides a private action for damages against federal officers who violate certain constitutional rights." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (internal quotation marks omitted).[2]  He alleges that the Defendants violated his Eighth Amendment rights by being deliberately indifferent to his knee pain.  The parties filed cross-motions for summary judgment, and the district court granted the Defendants' motion, and denied Plaintiff's.  It ruled that Plaintiff failed to show the Defendants knew of and disregarded an excessive risk to his health and safety.  Thus, the Defendants were entitled to qualified immunity, which protects government officials from "liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (internal quotation marks omitted).

---

[2] Plaintiff voluntarily dismissed a federal tort claim for medical malpractice. He also filed suit against unnamed Doe defendants but does not challenge the district court's dismissal of those claims.

II.  Discussion.

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc*., 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted).  "A court shall grant summary judgment if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)).

The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical needs.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  This prohibition contains an objective and a subjective component.  *Id*.  The objective component is met if the deprivation involves a sufficiently serious medical need, and the subjective component is met if a prison official knowingly disregards an excessive risk to an inmate's health or safety.  *Id*.  The district court ruled that Plaintiff's knee pain was a sufficiently serious medical need to meet the objective component, and the Defendants do not challenge that ruling.

The district court ruled that Plaintiff failed to present evidence that would satisfy the subjective component, and Plaintiff argues on appeal that was error.  He argues his evidence shows the Defendants delayed treatment for his knee pain, which is sufficient to satisfy the subjective component.

We agree with the district court's disposition of this case.  "Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm."  *Olson v. Stotts*, 9 F.3d 1475, 1477

5

(10th Cir. 1993) (brackets and internal quotation marks omitted). Plaintiff is correct that our court has held that substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *see also Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (holding that "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition"). But we have also held that "not every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock*, 218 F.3d at 1210. The level of pain required to satisfy the substantial-harm requirement is imprecise. In *Mata*, we held that delayed treatment for severe chest pain consistent with a heart attack, resulting in permanent heart impairment, was actionable. 427 F.3d at 755. By contrast, in *Olson* we held that an inmate's pain in the months before a scheduled heart procedure was not actionable because the doctor was able to alleviate the condition non-surgically and to administer medication. 9 F.3d at 1477.

The facts here are closest to *Olson*. The undisputed evidence shows that all the Defendants provided prompt, ongoing, and continuous treatment for Plaintiff's pain, giving him multiple steroid injections and NSAIDS to alleviate his immediate pain, as well as frequent examinations and x-rays; a consultation with an orthopedic surgeon outside the prison; and a request that he be approved for knee surgery to alleviate his ongoing pain.

Moreover, to establish the subjective component, the plaintiff must also show the defendant had a "sufficiently culpable state of mind," *Self v. Crum*, 439 F.3d

6

1227, 1231 (10th Cir. 2006) (internal quotation marks omitted); that is, that the Defendants "knew [Plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it," *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks omitted). In *Mata*, for example, prison officials failed to "contact the appropriate medical personnel, and/or attempt to assist [the inmate] in any fashion." 427 F.3d at 758. But an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). The "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self*, 439 F.3d at 1232.

We agree with the district court that the evidence does not support an inference that any of the Defendants were deliberately indifferent to Plaintiff's knee pain. Rather, the evidence shows they continuously responded to the risk by treating his pain with injections and medication, x-rays, an outside consultation and a request for surgery. Plaintiff's evidence indicates that he was provided, rather than denied, medical attention every time he went to sick call. While Plaintiff believes his knee condition required additional treatment from the Defendants and surgery should have been immediately requested and scheduled, an inference of deliberate indifference cannot be drawn simply because the prisoner "disagrees with a diagnosis or a

7

prescribed course of treatment," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). An inmate has a constitutional right only to medical care—"not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation marks omitted). Plaintiff's evidence that there were delays in obtaining approval for an outside consultation and for surgery do not show that any of the Defendants were deliberately indifferent to his pain. When, as here, medical personnel "orders treatment consistent with the symptoms presented and then continues to monitor the [inmate's] condition, an inference of deliberate indifference is unwarranted under our case law." *Self*, 439 F.3d at 1232–33.

We affirm the district court's judgment for substantially the reasons stated in its order dated May 10, 2017 and in the magistrate judge's R&R dated February 28, 2017. We grant Plaintiff's motion to proceed IFP and remind him that he must continue making partial payments until the entire fee has been paid**.**

Entered for the Court

Carolyn B. McHugh
Circuit Judge

8