# United States Court of Appeals
## For the First Circuit

No. 04-2578

MARIBEL ARTURET-VÉLEZ,

Plaintiff, Appellant,

v.

R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP, INC.,
BROWN & WILLIAMSON TOBACCO CO., THE AMERICAN TOBACCO COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,
Lipez, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Amarilys Arocho-Maldonado and Herbert Muriel on brief for
appellant.
Salvador Antonetti-Zequeira, Rosalie Irizarry-Silvestrini,
Clotilde Rexach-Benítez, Fiddler, González & Rodríguez, P.S.C.,
Robert H. Klonoff, James R. Johnson, L. Christine Buchanan, Ryan E.
Harden, Jones Day, William E. Hoffman, Jr., William L. Durham II,
Evan Glover, King & Spalding LLP, Javier López-Pérez and Goldman,
Antonetti & Córdova, P.S.C. on brief for appellees.

November 14, 2005

---

[*]Of the Northern District of California, sitting by
designation.

**BOUDIN, <u>Chief Judge</u>.**    This is an appeal by Maribel Arturet Vélez ("Maribel"), plaintiff in the district court, from the dismissal of her complaint in a wrongful death case.  The defendants in the district court were four major tobacco companies ("the companies"): R.J. Reynolds Tobacco Company, Liggett Group, Inc., Brown & Williamson Tobacco Co., and The American Tobacco Company.  The dismissal was on the ground that the statute of limitations barred the suit.

Maribel is the daughter of Angel Luis Arturet Concepción ("Angel"), who died in March 1999.  On September 26, 2003, Maribel brought the present suit in the federal district court in Puerto Rico against the companies for the wrongful death of her father. The complaint alleged that Angel, born in the mid-1930s, had been a smoker for more than 56 years prior to his death at age 65, and that he had sought repeatedly to stop smoking but had been unable to do so even after doctors warned him that he should.

The suit, brought primarily in diversity,[1] is concededly governed by the law of Puerto Rico.  Puerto Rico has a one-year statute of limitations for tort claims.  P.R. Laws Ann. tit. 31, § 5298 (1990).  Obviously anticipating a challenge on this ground, the drafter of the complaint did not emphasize the capacity of

---

[1]The original complaint included one count alleging violations of federal cigarette labeling laws, <u>see</u> 15 U.S.C. §§ 1331 <u>et seq.</u> (2000), but no separate argument premised on this count has been made on this appeal.

cigarettes to kill--in fact, the cause of Angel's death is not explicitly stated--but rather the capacity of tobacco to addict the smoker. Conformably, the complaint alleged that Maribel "did not learn that addiction was a substantial factor relative to [her] father's death until January 9, 2003 after consulting a lawyer who had experience with cigarette cases."

The complaint went on to charge that the companies had knowledge of the dangers of their product (including the product's addictiveness), did not disclose these dangers, marketed their product to youth for whom smoking was especially dangerous, and increased the addictive character of their cigarettes by various means while denying that cigarettes were addictive. Successive counts charged strict liability, negligence, failure to warn measured by both state and federal standards, defective product and defective design. The complaint sought $6 million in compensatory damages and $5 million in punitive damages.

The companies moved to dismiss the complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), on the ground that the complaint showed on its face that the suit was barred by the statute of limitations. Addressing the tolling defense implicit in the complaint's "addiction" allegations, the companies argued that the alleged implied cause of death was disease (e.g., cancer)--not addiction--and in any event Maribel knew or should have known enough at the time of her father's death about the link between

-3-

smoking and her father's addiction, illness, and death to require her to file her suit within one year. The motion pointed to numerous cases holding that by the 1990s, knowledge of the dangers of smoking was so widespread that judicial notice could be taken of it.

Maribel responded that the "common knowledge" defense had not been accepted by all courts and that her knowledge and diligence were questions for the jury. Maribel contended that until she encountered a newspaper article on September 27, 2002, she did not realize that cigarettes were addictive. Even now, she said, the cigarette industry continued to deny the addictive effects of nicotine.

The district judge granted the motion to dismiss in an opinion and order filed on September 30, 2004. The court said that a number of like cases had been dismissed by other judges of the same district court. It agreed with the defendants that at best the complaint implied that Angel had died from a cigarette-induced illness like cancer or heart disease, and it held that any of these medical conditions, together with Maribel's knowledge of her father's smoking, put her "on notice of her potential cause of action against Defendants" no later than March 1999 when her father died. This appeal followed.

The case is complicated by the reinforcing effects of two legal tactics: the decision by Maribel's counsel to leave obscure

some arguably pertinent information (e.g., the immediate cause of death) and the decision of the companies' counsel to use Rule 12(b)(6) rather than a motion for summary judgment to present the statute of limitations issue. It was somewhat risky for the district court to employ Rule 12(b)(6) as the vehicle for disposition of the statute of limitations issue.

Nevertheless, the district court's result is correct. In framing the issues, we accept that the allegations of the complaint are generally to be taken as true for purposes of a motion to dismiss, and a complaint should not be dismissed if a claim can plausibly be embraced by those allegations. Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).[2] Although the statute of limitations is formally a defense, it was effectively anticipated by the complaint (inasmuch as the complaint clearly laid the groundwork for a tolling argument) and can be disposed of fairly on the present briefs. See id. at 12.

In our view, as in the district court's, Maribel must be claiming that her father's death was proximately caused by one or more of the familiar diseases linked with tobacco use and recited

_____

[2]Like almost all general statements, there are qualifications. The court can consider, for instance, facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss. See Rodi, 389 F.3d at 12; Soto-Negron v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

in the complaint itself. Doubtless, addiction can cause harms independent of death--e.g., the cost and discomfort suffered by any addict who weans himself from a drug through medical means like methadone--but the $6 million compensatory damages which Maribel's complaint seeks can only be from losses resulting from Angel's death. Nowhere does Maribel dispute the district court's inference to this effect.

Yet it is playing word games to say, as the companies suggest, that therefore Angel allegedly died from a tobacco-related disease like cancer rather than from addiction. It could well be that both were proximate causes: the addiction by making it impossible for Angel to quit and the continued smoking by finally killing him. See generally Harper, James & Gray, The Law of Torts § 20.3, at 114 (2d ed. 1986). Just how Maribel could show that "but for" the addiction her father would have quit in time to save his life is a different question; but arguably the complaint would permit her to try to make such a showing.

We also think it fair to infer that Maribel knew at the time of her father's death that cigarettes were capable of causing the deadly diseases recited in her complaint. Nowhere does she deny this inference--indeed, some of her statements tend to confirm it--while throughout her papers she has consistently alleged that she did not know that cigarettes were addictive until within a year before the complaint was filed. The latter claim, that she only

-6-

then learned that cigarettes were highly addictive in the medical sense, we will accept as true for purposes of this appeal. Compare Soliman v. Philip Morris Inc., 311 F.3d 966, 971-75 (9th Cir. 2002), cert. denied, 540 U.S. 814 (2003), with Grisham v. Philip Morris U.S.A., 403 F.3d 631, 633, 636-39 (9th Cir. 2005).

A cause of action for wrongful death arises at the time of death, but Puerto Rico, like many other jurisdictions, tolls the running of the statute until the claimant is on notice of her claim--that is, "'notice of the injury, plus notice of the person who caused it.'" Rodriguez-Suris v. Montesino, 123 F.3d 10, 13 (1st Cir. 1997) (quoting Colon Prieto v. Geigel, 115 P.R. Dec. 232, ---, 15 P.R. Offic. Trans. 313, 330 (1984)). This does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information. Rodriguez-Suris, 123 F.3d at 14-17; Villarini-Garcia v. Hospital del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993).

The companies in this case say that the "injury" that should have put Maribel on notice is Angel's death, if not his earlier medical conditions of which she evidently had knowledge. Yet, while some decisions talk in terms of "injury," others recognize explicitly--and we think correctly--that there can be injuries that do not raise even a suspicion of liability, and that the statute is to be tolled until the time when a reasonable

plaintiff would begin an investigation.  E.g., Espada v. Lugo, 312 F.3d 1, 3-4 (1st Cir. 2002).  This is likely not a true conflict in case law but rather different emphases in phrasing due to different patterns of fact.

Even so, once Maribel's father died from a disease that could easily have been caused by cigarette smoking, she had notice that she might well have a claim based on the companies' furnishing of a dangerous product; and, if she had diligently pursued such a claim with a competent lawyer, the reinforcing arguments based on addiction could have been unearthed.  Like one who suspects that an operation had gone wrong but does not know why, she had a duty to investigate and is charged with knowledge that consulting with a competent lawyer would have brought forth.  See Villarini-Garcia, 8 F.3d at 85.

In her complaint, Maribel says that only when she knew of the addictive properties of tobacco did she conclude that her father's continued smoking was involuntary.  If a law suit based on "voluntary" use of cigarettes were everywhere forbidden and everyone knew this to be so, perhaps the result here would be different; but such law suits against tobacco companies have been common for years, generating vast publicity and at least intermittent success.  A reasonable person who, like the plaintiff, wanted to recover for wrongful death based in large part on the dangerousness of cigarettes had adequate grounds to consult a

-8-

lawyer.  Cf. Marrapese v. Rhode Island, 749 F.2d 934, 943 (1st Cir. 1984), cert. denied, 474 U.S. 921 (1985).

The complaint (albeit without factual detail) charges that the tobacco industry has long concealed or denied evidence that tobacco is addictive.  If there were no potential claim against the companies for wrongful death absent addiction, then concealment of tobacco's addictiveness might toll the statute--just as a doctor's false but credible denial that there was any problem with an operation might do so.  But the plaintiff's complaint includes allegations (wrongful death; dangerous product) that are not dependent on the addictive nature of cigarettes.  This case is about wrongful death for which addiction can only be an aggravating cause.  The statute was triggered by the fact that a wrongful death claim was reasonably possible even if the aggravating circumstance of addiction was not yet known.

Maribel says briefly in her complaint that she made "numerous attempts to retain lawyers" but that they "all professed lack of qualification to handle a cigarette case."  Tantalizingly, the complaint does not clearly say whether she made these efforts before or after she read the article in September 2002.  If it was before, then this would only confirm that Maribel herself recognized the possibility of suit prior to reading the article, undermining her tolling defense.  If only afterwards, the failure to act within a year after the death was a lack of due diligence.

Tolling doctrine is a compromise of competing interests. <u>Villarini-Garcia</u>, 8 F.3d at 85. In some cases, it permits suit to be brought well after the injury itself, sometimes marring the defendant's ability to defend (<u>e.g.,</u> because evidence is lost). But it requires inquiry by the claimant, and usually commencement of the suit itself, well before <u>all</u> of the pertinent information to reinforce the claim is necessarily available. If this compromise seems an imperfect solution, it shares its imperfection with most legal doctrine--and much else that human beings can contrive.

In the present case--not necessarily in all such cases-- the addiction claim is merely a part of the larger claim for wrongful death based upon the well known dangers of tobacco and does not escape the consequences of Maribel's delay in bringing suit. Thus, the statute of limitations bars the present claim. Maribel's further argument on appeal that leave to amend should have been granted fails, <u>inter alia</u>, because Maribel's brief offers no explanation of what could have been said in an amended complaint to defeat a new dismissal.

The judgment is <u>affirmed</u>. Each side shall bear its own costs on this appeal.

<u>It is so ordered</u>.