Pedro MALDONADO, et als., Plaintiff,

v.

COOPERATIVA DE AHORRO
y Credito Abraham Rosa,
et als., Defendants.

No. Civ. No. 08–1798(PG).

United States District Court,
D. Puerto Rico.

Feb. 9, 2010.

Vilma M. Dapena–Rodriguez, Vilma Maria Dapena Law Office, Bayamon, PR, for Plaintiff.

Federico Lora–Lopez, Federico Lora Lopez Law Office, San Juan, PR, for Defendants.

### OPINION AND ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Plaintiff Pedro Maldonado (hereinafter "Plaintiff" or "Maldonado"), his wife, Aileen Rodriguez ("Rodriguez"), and the Conjugal Partnership constituted between them filed this action under the Americans with Disabilities Act of 1991 ("ADA" or "the Act"), 42 U.S.C. § 12101 *et seq.*, against Maldonado's former employer, the Cooperativa de Ahorro y Credito Abraham Rosa ("Cooperativa", "Defendant" or "the Company"), alleging discrimination and retaliation on the basis of a protected disability. *See* Docket No. 1. As part of his discrimination claim, Plaintiff alleges that Cooperativa submitted him to a hostile work environment and wrongfully terminated and retaliated against him for engaging in protected conduct. Plaintiff and his wife include supplemental state law claims based upon Puerto Rico's wrongful termination, retaliation, disability and general negligence statutes. *See* P.R. LAWS ANN. tit. 1, § 501, et seq. (disability discrimination); P.R. LAWS ANN. tit. 29, § 185, et seq. (wrongful discharge); P.R. Laws Ann. tit. 31, § 5142 (general tort); P.R. LAWS ANN tit. 29, § 194 et seq. (retaliation).

The Cooperativa moved for summary judgment requesting the dismissal of the claims brought forth by the plaintiffs on the grounds that Maldonado is unable to establish a *prima facie* case of disability discrimination and retaliation. First, the Defendant argues that Maldonado is not disabled within the definition of the ADA. The Defendant also argues that Plaintiff is unable to prove his hostile work environment claim. In its defense, the Defendant proffers that its actions were not motivated by Plaintiff's alleged condition. On the contrary, the Company contends that it did not retaliate against Plaintiff for having requested an accommodation, but instead, claims that its actions were based on legitimate grounds. *See* Dockets No. 43. Finally, the Defendant requests the dismissal of the derivative claims of Plaintiff's spouse and Conjugal Partnership claiming they are time barred. Plaintiff's opposi-

tion is also before our consideration. *See* Dockets No. 64–65.

After a close examination of all the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS IN PART AND DENIES IN PART** Cooperativa's motion for summary judgment for the reasons explained below.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004).

■ To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the

movant's efforts should be deemed unavailing. See *Suarez v. Pueblo Int'l*, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

■ At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. *See Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.*

## II. FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address several compliance issues presented to the Court when reviewing Defendant's and Plaintiffs' statements of facts.

■ "Documents supporting or opposing summary judgment must be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir.2000) (citing FED.

R.Civ.P. Rule 56(e)). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). See 10A *Wright, Miller & Kane, Federal Practice & Procedure* § 2722 (3d ed. 1998). "Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Hoffman v. Applicators Sales And Service, Inc.*, 439 F.3d 9, 14 (1st Cir.2006). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." *Robinson v. Bodoff*, 355 F.Supp.2d 578, 582 (D.Mass.2005) (striking all exhibits that were submitted without affidavits).

■ Moreover, a party must not "[overlook] the crucial point that documents do not automatically become a part of the record simply because they are the products of discovery." *Hoffman*, 439 F.3d at 15. "If a party wishes the court to consider matters disclosed during discovery, he must take appropriate steps to have them included in the record: merely citing to pages of discovery materials not of record does not suffice." *Id.*

■ Pursuant to the foregoing, some of the materials submitted by both the Plaintiffs and Defendant are inadmissible for the purposes of summary judgment. After a careful review of the record, this Court finds that many of the exhibits submitted by the parties in support of their statements of fact lack an authenticating affidavit or fail to indicate whether they stem from discovery materials on file. As

a result, unless admitted by the opposing party, the Court did not consider the factual statements submitted by the parties that were not properly supported by the record on file.

As per the foregoing discussion, the Court found the following relevant facts were undisputed:

1. Maldonado started to work for the Cooperativa on March 16, 1998.

2. Plaintiff was appointed to the position of Manager of the Department of Promotion and Educational Services at Cooperativa, and his immediate supervisor was the Executive President, Luis R. Lopez–Roman ("Lopez").

3. Maldonado received direct supervision from Lopez and in turn, Maldonado supervised the positions of Graphic Artist, Administrative Assistant and Advertising Agent. However, Plaintiff could not hire, terminate or promote employees.

4. Maldonado's position's description states that other tasks may be added or the existing ones may be modified as the Cooperativa stipulates.

5. On March 31, 2005, Maldonado signed a receipt of the position's description which had been discussed on February 21, 2005.

6. On May 4, 2006, Maldonado presented Lopez a note from Dr. William E. Phillipp addressed "to who whom it may concern." The note stated that Maldonado suffered from sleep apnea and that although he could continue his usual office work, he was not authorized to drive motor vehicles.

7. On May 18, 2006, Lopez wrote a letter to Maldonado, which was received on the same date, informing him, among other things, that due to the fact that driving a vehicle was an essential function of his position, the Cooperativa

could: (1) transfer him to a position in the client service area which did not require driving motor vehicles with the same salary until July 31, 2006, at which time his salary would be adjusted to the new position if his limitation continued; or (2) another provisional alternative would be for Maldonado to take his accumulated sick leave until the beginning of his vacation scheduled from June 12 until July 1, 2006. Lopez also expressed being in "the best disposition to hearing and pondering other alternatives which may be viable and not an onus for this institution."

8. On May 19, 2006, Maldonado responded to Lopez's letter. Therein, he informed Lopez that his sleep apnea was diagnosed as moderate to severe and that, according to the medical study performed, his limitation on driving appeared to be temporary, until treatment was initiated and the symptoms resolved.

9. On June 8, 2006, Plaintiff presented to Cooperativa another note from Dr. William E. Phillippi wherein the doctor stated that Maldonado "is under medical treatment for obstructive apnea. He does not have daytime sleep. He can drive motor vehicles."

10. On August 7, 2006, Lopez gave Maldonado a letter that brought to his attention "several matters which would help . . . in improving the coordination of the work which [Plaintiff] perform[ed] in the Cooperativa." Among the matters discussed in the letter were the following: (1) Maldonado's entrance time would be 8:30 a.m. from Monday to Friday and on Saturdays at 9 a.m.; (2) Maldonado would have half day off on Tuesdays; (3) a record would be kept of all visits received, including those assigned by the Executive President; (4) the

meetings of the Educational Committee and with [client officers] would be coordinated with the Executive President and then Plaintiff would coordinate the announcement and the material to be discussed at the meeting; (5) all works assigned to the Graphic Artist had to be exclusively of the operational/promotional process of the Cooperativa and any art work or design for third parties required the approval of the Executive President; (6) Plaintiff was asked to handle telephone calls, photocopies, faxes and matters of said nature.

11. On June 8, 2007, Lopez wrote a letter informing Plaintiff that due to an operational evaluation conducted in the year 2006, and recommendations received from a study conducted by the firm engaged for such purpose in order to make Cooperativa more competitive, the position of Manager and Advertising and Educational Services was being eliminated. Maldonado was offered a separation package.

12. On July 5, 2007, Maldonado filed a charge of discrimination before the Equal Employment Opportunity Commission (EEOC) against Cooperativa.

### III. DISCUSSION

#### A. Americans with Disabilities Act

In the complaint, Plaintiff alleges he was discriminated against because of his disability. Plaintiff's disability claim is two-fold: he alleges workplace harassment due to his disability as well as retaliation. *See* Docket No. 1.

"The ADA provides 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC,* 521 F.3d 76, 82

(1st Cir.2008) (*citing Katz v. City Metal Co.*, 87 F.3d 26, 30 (1st Cir.1996)). Specifically, "Title I of the ADA prohibits covered entities from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 74 (1st Cir.2010) (citing 42 U.S.C. § 12112(a)).[1]

### 1. Hostile Work Environment

In his complaint, Maldonado alleges that as a result of his disability he was subjected to a pattern of harassment that included threats of termination and amounted to a hostile work environment. *See* Docket No. 1. The Defendant now moves to dismiss Plaintiff's disability hostile work environment claim arguing that Plaintiff is not a qualified individual with a disability as defined by the ADA. The Defendant also contends that Plaintiff failed to introduce sufficient evidence of a hostile environment. *See* Docket No. 43.

■■■ "It has been held that, similar to Title VII discrimination actions, ADA-covered individuals may assert hostile work environment claims premised on disability-based harassment." *Rodriguez Velazquez v. A.M.A.*, 502 F.Supp.2d 200, 209 (D.P.R. 2007) (*citing Quiles–Quiles v. Henderson*, 439 F.3d 1, 5 n. 1 (1st Cir.2006) (assuming disability harassment as a viable theory of recovery under the Rehabilitation Act)). In fact, "the elements used for Title VII hostile environment claims have been adapted to ADA cases." *Rodriguez Velazquez*, 502 F.Supp.2d at 209. The elements a plaintiff must prove to succeed on a claim of disability-based harassment are: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Id.*

■■■ In addition, to establish a hostile work environment, a plaintiff must show that his/her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [his] employment and create an abusive working environment" *Quiles–Quiles*, 439 F.3d at 7 (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir.2005) (applying "severe and pervasive" standard in disability harassment case under the Rehabilitation Act)). "Among the factors relevant to this inquiry are the severity of the conduct, its frequency, and whether it unreasonably

---

1. Although the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 (2008), changed the evaluation of ADA claims and the definition of the term "disability" under the ADA, its provisions, by their own terms, did not become effective until January 1, 2009. However, the Court need not concern itself with these amendments because they do not apply retroactively. *See Fournier v. Payco Foods Corp.*, 611 F.Supp.2d 120, at 129 n. 9 (D.P.R.2009). "When a case implicates a federal statute enacted after the events in a suit, that statute will not be construed to have a retroactive effect absent clear congressional intent." *Duhy v. Concord General Mut. Ins. Co.*, No. 1:08–cv–00192, 2009 WL 1650024 (D.N.H. June 10, 2009) (*citing Landgraf v. USI Film Prods.*, 511 U.S. 244, 245, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (declining to retroactively apply the 1991 amendments to Title VII case)). Accordingly, this Court will apply the ADA as it existed when the acts complained of occurred.

interfered with the victim's work performance." *Quiles–Quiles,* 439 F.3d at 7 (*citing Harris,* 510 U.S. at 23, 114 S.Ct. 367). Basically, the plaintiff must show that "the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it abusive and the victim in fact did perceive it to be so...." *Whitlock v. Mac–Gray, Inc.,* No. Civ.A. 00–10546–GAO, 2002 WL 31432688, at *3 (D.Mass. October 30, 2002).

We shall begin our analysis by determining whether or not Plaintiff has successfully established the first element of his hostile work environment claim, namely, whether or not he belongs to a protected group.

 "[T]he *sine qua non* requirement for ADA protection, is whether the individual has a 'disability' as defined by the ADA." *Corujo–Marti v. Triple–S, Inc.,* 519 F.Supp.2d 201, 212 (D.P.R.2007). Under the ADA, the term "disability" is defined as either: "(a) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment." *See* 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g). A plaintiff must at least satisfy one of the three alternative definitions. *See Corujo–Marti,* 519 F.Supp.2d at 212.

The Court notes at the outset that it is extremely unclear from Plaintiff's complaint and briefing under which of the definitions of disability he is proceeding. Plaintiff apparently proceeds only on the assertion that his impairment (sleep apnea) limits the major life activity of driving. See Docket No. 1 at ¶ 41. Notwithstanding, in his opposition to the motion for summary judgment, Plaintiff informed the Court "that he will not pursue any "regarded claim" in this action." See Docket No. 65 at page 16. Accordingly,

the Court will only analyze the remaining two possibilities: whether Plaintiff suffers from a physical or mental impairment that substantially limits one or more major life activities or has a record of such an impairment.

#### a. Actual Disability

 When considering statutory disability under subsection § 12102(2)(A), the Court of Appeals for the First Circuit has established a three-part analysis consisting of the following inquiries: (1) if the plaintiff suffered a physical or mental impairment; (2) if the "life activity" limited by the impairment qualify as "major"; and (3) if the impairment, in fact, substantially limits the plaintiff's identified major life activity. *See Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (internal citations omitted). "The burden is on the plaintiff to establish these three elements." *Calero–Cerezo,* 355 F.3d at 20 (internal citations omitted).

For purposes of this analysis, we will assume without deciding that sleep apnea is a physical impairment, and thus we will move on to the second element of the three-part inquiry. "[T]he Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity." *Torres–Alman v. Verizon Wireless Puerto Rico, Inc.,* 522 F.Supp.2d 367, 382 (D.P.R.2007) (*citing Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (1st Cir.2002)).

 The United States Supreme Court has determined that the phrase "major life activities" refers to those activities that are of central importance to daily life. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The EEOC has defined the term to mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29

C.F.R. § 1630.2. The First Circuit has also recognized lifting, sleeping, eating, thinking and concentrating as major life activities, and has assumed without deciding that work may constitute a major life activity. *See Calero–Cerezo,* 355 F.3d at 21; *Sullivan v. Neiman Marcus Group Inc.,* 358 F.3d 110, 115 (1st Cir.2004); *Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 21 (1st Cir.2002). However, "the legal trend appears to be that driving is not a major life activity." *Bourbeau v. City of Chicopee,* 445 F.Supp.2d 106, 121 (D.Mass. 2006) (*citing Guzman–Rosario v. United Parcel Serv.,* 397 F.3d 6, 11 & n. 4 (1st Cir.2005) (observing that it is "unclear" whether driving is a major life activity)). Accordingly, we refuse to disregard this legal trend herein. Resultantly, we are forced to conclude that the Plaintiff here has failed to identify a life activity limited by his impairment that qualifies as major, and thus, does not suffer from an actual disability as defined by the Act.

■ Notwithstanding, even if driving qualified as a major life activity, this Court would have to pass judgment based on the facts of this case as to whether or not the impairment, in fact, *substantially limited* Plaintiff's ability to drive. In the motion for summary judgment now before the Court, the Cooperativa contends that Plaintiff is not disabled within the meaning of ADA because his condition was not of sufficient duration and severity to substantially limit him.

The term "substantially limits" is defined by the EEOC regulations as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which

the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). In applying this standard, a court must consider the nature and severity of the impairment, its expected duration, and its permanent or long-term impact. *See Gillen,* 283 F.3d at 21 (*citing* 29 C.F.R. § 1630.2(j)(2)).

"It is well established that the determination of whether a plaintiff has a disability must be made on a case-by-case basis." *Calero–Cerezo,* 355 F.3d at 20 (*citing Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). "It is insufficient for individuals attempting to prove disability status … to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor,* 534 U.S. at 198, 122 S.Ct. 681. Rather, those seeking ADA's protection must "prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial." *Id.* (*citing Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). Moreover, "[a]n individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Toyota Motor Mfg.,* 534 U.S. at 199, 122 S.Ct. 681.

In addition to the foregoing, the First Circuit Court of Appeals has noted that "the ADA is not a medical leave act nor a requirement of accommodation for common conditions that are short-term or can be promptly remedied." *Guzman–Rosario,* 397 F.3d at 10. In order to be "substantially limiting," an impairment must be "permanent or long term." *Id.* "This may encompass conditions that are potentially

long-term, in that their duration is indefinite and unknowable, ..., but not those that are brief or foreseeably temporary...." *Id.* (internal citations and quotation marks omitted).

In the case at hand, it is uncontested that Maldonado informed his supervisor, Lopez, in writing that the limitation on driving appeared to be temporary, until treatment was initiated and the symptoms were resolved. *See* Finding of Fact No. 8. In view of this, we find that the record reveals that the impairment that limited Plaintiff's ability to drive was not "substantially limiting" as per the definition of the term and its application. Having failed to set forth evidence as to how, in terms of his own experience, he was substantially limited with regards to driving or any other major life activity, we are forced to conclude that Maldonado did not have an actual disability within the meaning of the statute.

### b. "Record of" a disability

■ The second category of disability under 42 U.S.C. § 12102(2)(B) covers those having a record of a mental or physical impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2)(B). To have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, a mental or physical impairment that substantially limited a major life activity. *See* 29 C.F.R. § 1630.2(k).

"[T]he recorded impairment must be one that substantially limited a major life activity." *Santiago Clemente v. Executive Airlines, Inc.,* 213 F.3d 25, 33 (1st Cir.2000) (*citing Sorensen v. University of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999); *Hilburn v. Murata Elec. North Am., Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999)). *See also Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162 (1st Cir.2002) ("A record or history of an impairment is not sufficient to show disability; the record must be of an impairment [that] substantially limited a major life activity."); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.,* 242 F.3d 610, 615 (5th Cir.2001) ("[N]ot only must [Plaintiff] demonstrate that she has a record of an injury or impairment, but the evidence must show that her impairment limited a major life activity."). "Furthermore, to successfully establish an ADA claim the employer, in making the employment decision, must rely on the record indicating that the plaintiff has or had a substantially limiting impairment." *Rivera–Mercado v. Scotiabank De Puerto Rico–Intern.,* 571 F.Supp.2d 279, 287 (D.P.R.2008) (internal citations omitted).

Although the record shows that the Cooperativa was aware of Maldonado's sleep apnea diagnosis, Plaintiff does not adduce to any record that indicates that his impairment limited, much less substantially limited, any major life activity. "Mere knowledge of an impairment does not create a record of an impairment." *Rivera–Mercado,* 571 F.Supp.2d at 287 (*citing Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir.2000)). Accordingly, Maldonado has not advanced sufficient evidence to satisfy subpart (b) of 42 U.S.C. § 12102(2), and thus, Plaintiff's evidence cannot create a genuine dispute of fact on this issue.

Having failed to make out a claim under the "actual disability" and "record of" prongs of the definition of disability, we hereby hold that Maldonado does not belong to a protected group inasmuch as he is not a qualified individual with a disability under ADA. Accordingly, Plaintiff is unable to succeed on a claim of disability-based harassment and Defendant's request for dismissal of Plaintiff's hostile work environment claim must be **GRANTED.**

## 2. Retaliation

Maldonado asserts an independent claim that he suffered retaliation for his requesting an accommodation. The alleged acts of retaliation included threats of termination, the creation of a hostile work environment, and eventually, his discharge. *See* Docket No. 1. In its motion for summary judgment, the Defendant denies the acts of retaliation and contends that there is no causal connection between the reasonable accommodation request on May 4, 2006 and his termination on June 8, 2007. Moreover, Defendant argues that Plaintiff was terminated "as result of thoughtfully researched and analyzed business decision to eliminate the plaintiff's position," not because of his disability. *See* Docket No. 43. According to Cooperativa, Maldonado's dismissal was due to the economic situation of Cooperativa that required a change in its expenses structures and their reduction. *Id.* On the other hand, Maldonado argues in his opposition that Cooperativa threatened him with eliminating his position the moment he requested a reasonable accommodation, and that between then and his termination, the Defendant demoted him, eliminated his supervisory duties, began to constantly monitor his work and eliminated his access to a secretary before eventually terminating his employment. *Id.*

 The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "The essence of a retaliation claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the

plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Corujo–Marti,* 519 F.Supp.2d at 222 (*citing Sifre v. Department of Health,* 38 F.Supp.2d 91, 101 (D.P.R.1999), *aff'd,* 214 F.3d 23, 26 (1st Cir.2000)). To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected conduct, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. *See Calero–Cerezo,* 355 F.3d at 25.

"An ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability claim." *Freadman v. Metropolitan Property and Cas. Ins. Co.,* 484 F.3d 91, 106 (1st Cir.2007) (internal citations omitted). "To succeed on a claim of retaliation, the plaintiff must prove that [he] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that the [employer's] desire to retaliate against [him] was a determinative factor in its [unfavorable employment] decision." *Boutin v. Home Depot U.S.A., Inc.,* 490 F.Supp.2d 98, 106 (D.Mass.2007) (internal citations omitted).

As to the first requirement, the First Circuit Court of Appeals has held that "[r]equesting an accommodation is protected conduct for purposes of the ADA's retaliation provision." *Id.* at 106 (*citing Wright v. CompUSA, Inc.,* 352 F.3d 472, 478 (1st Cir.2003)). In the case at hand it is uncontested that Maldonado informed his supervisor, Lopez, of his medical impairment and requested the accommodation of not driving motor vehicles. *See* Finding of Fact No. 6. The Defendant does not contest that this was a reasonable accommodation request, *see* Docket No. 43 at

pages 6–7, thus, the first element of the three-part test is fulfilled.

As to the adverse employment action requirement, the First Circuit has held that "[t]o be adverse, an action must materially change the conditions of plaintiffs' employ." *Gu v. Boston Police Dept.*, 312 F.3d 6, 14 (1st Cir.2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" *Id.* (*citing Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998)). "The adverse employment action requirement may [also] be satisfied by showing the creation of a hostile work environment...." *Quiles–Quiles*, 439 F.3d at 8.

Now, as to the final prong of the applicable test, the law makes clear that "there are many sources of circumstantial evidence that can demonstrate retaliation in a way sufficient to leap the summary judgment hurdle. One way is to show a close temporal proximity between the protected conduct and the adverse employment action." *Salgado–Candelario v. Ericsson Caribbean, Inc.*, 614 F.Supp.2d 151 (D.P.R. 2008) (*citing Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991); *Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir. 1994); *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir.2008)).

 In the case at hand, Plaintiff sets forth evidence of a transfer from a supervisory position to a lower-lever position (Service Agent) that took place immediately after his request for accommodation. In addition, the record before the Court also reveals that the conditions of Plaintiff's employ materially changed when his supervisor changed his work schedule, included clerical duties as part of his job description and implemented certain changes to monitor Plaintiff's performance

more closely and frequently. *See* Finding of Fact No. 10. These changes took place three (3) months after the Plaintiff's accommodation request and continued on until his eventual termination. Considering the actions taken by the Defendant and the time lapse between the accommodation request and these actions, we find that there is sufficient evidence on record for a jury to find that these employment actions were adverse and motivated by a desire to retaliate against Plaintiff.

Moreover, the Court must add that "[s]ubject to some policing at the outer bounds, [the hostile environment question] is commonly one of degree—both as to severity and pervasiveness—to be resolved by the trier of fact on the basis of inferences drawn "from a broad array of circumstantial and often conflicting evidence."" *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir.2002) (quotation marks and internal citations omitted); *see also Quiles–Quiles*, 439 F.3d at 8. Accordingly, we believe that determining whether Defendant's actions were materially adverse and whether a causal connection exists between these actions and the accommodation request is for the jury to find.

Now, "[i]f the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to 'articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason.'" *Freadman*, 484 F.3d at 99 (*citing Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 105 (1st Cir.2005)). "If the defendant offers a legitimate, non-discriminatory reason, the initial inference of discrimination evaporates, ..., and the burden then shifts back to the plaintiff to proffer evidence to establish that [the defendant's] non-discriminatory justification is mere pretext, cloaking discriminatory animus." *Freadman*, 484 F.3d at 99 (in-

ternal citations omitted). *See also Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir.1998) ("Plaintiff must muster proof that enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination."). Notwithstanding, "[t]he ultimate burden of proving unlawful discrimination rests at all times with [Plaintiff]." *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 105 (1st Cir. 2005).

Other than deny that they took place, the Cooperativa fails to justify or offer a legitimate, non-discriminatory reason for the alleged acts of retaliation (other than the termination). Cooperativa only attempts to articulate a non-discriminatory justification for the Plaintiff's termination, namely, its economic situation, which required a change in its expenses structures and their reduction. As pointed out by the Plaintiff in his opposition, the documents attached to Cooperativa's motion for summary judgment, which evince its proffered reason for Plaintiff's termination, are not properly authenticated. Therefore, not being able to examine the documents that ground the Defendant's proffered reason, we can only conclude that the Defendant has failed to meet its burden to produce credible evidence showing that the legitimate non-discriminatory reason advanced was the real reason. As a result, Plaintiff is entitled to present his case to a jury.

In light of the foregoing, the Defendant's request for dismissal of Plaintiff's retaliation claim under ADA is hereby **DENIED.**

### B. Puerto Rico Claims

Plaintiff, his wife and their Conjugal Partnership include supplemental state law claims based upon Puerto Rico's wrongful termination, retaliation, disability and general negligence statutes. *See* P.R. Laws Ann. tit. 1, § 501, et seq. (disability discrimination); P.R. Laws Ann. tit. 29, § 185, *et seq.* (wrongful discharge); P.R. Laws Ann. tit. 31, § 5142 (general tort); P.R. Laws Ann tit. 29, § 194 *et seq.* (retaliation). We will analyze the viability of each, in turn.

### 1. Puerto Rico's Disability Statute

■ Law No. 44 of July 2, 1989, P.R. Laws Ann. tit. 1, § 501, *et seq.* ("Law 44"), "is Puerto Rico's counterpart to the ADA," *Salgado–Candelario v. Ericsson Caribbean, Inc.*, 614 F.Supp.2d 151, 175 (D.P.R. 2008), inasmuch as it bans discrimination against individuals with disabilities by any public or private institution. *See* P.R. Laws Ann., tit. 1, § 504. In fact, "Law 44 was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA." *Torres–Alman v. Verizon Wireless Puerto Rico, Inc.*, 522 F.Supp.2d 367, 401 (D.P.R.2007) (*citing Arce v. ARAMARK Corp.*, 239 F.Supp.2d 153, 169 (D.P.R.2003)). Accordingly, "the elements of proof for a claim under Law 44 are essentially the same as those for establishing a claim under the ADA." *Salgado–Candelario*, 614 F.Supp.2d at 175 (internal citations omitted). However, contrary to ADA, "Law 44 lacks a retaliation component." *Torres–Alman*, 522 F.Supp.2d at 401 n. 19 (*citing* P.R. Laws Ann., tit. 1, § 502).

Therefore, to the extent Plaintiff's disability-harassment claim under the ADA failed, the same claim under Law 44 must also fail. In addition, the Plaintiff does not have a claim for retaliation under Law 44. As such, Defendant's motion for summary judgment as to Plaintiff's Law 44 claim is hereby **GRANTED.**

### 2. Puerto Rico's Retaliation Statute

■ The Cooperativa also requests the dismissal of Plaintiff's claim pursuant to

Law No. 115 of December 20, 1991, P.R. LAWS ANN. tit. 29, § 194 et seq. ("Law 115"), which "protects employees that collaborate in investigations or offer testimony before an administrative, judicial or legislative forum, from adverse actions by their employers." *Salgado–Candelario,* 614 F.Supp.2d at 177 (*citing* P.R. LAWS ANN., tit. 29, § 194a). The statute "imposes an obligation on the employee to establish, through direct or circumstantial evidence, a prima facie case that he or she (a) participated in an activity protected by §§ 194 et seq. and (b) was subsequently discharged." *Lupu v. Wyndham El Conquistador Resort & Golden Door Spa,* 524 F.3d 312, 313 (1st Cir.2008) (internal citations and quotation marks omitted).

■ In his opposition the Plaintiff states as follows:

[D]efendant alleges that Law 115 does not apply because plaintiff did not file a claim in any judicial or administrative forum. **This is true,** however, naming the wrong statute is a non-prejudicial and inconsequential mistake. The correct statute should have been Law 69 of July 6, 1985, 29 [P.R. LAWS ANN., tit. 29,] § 1321 et seq.

Docket No. 65 at page 27 (emphasis ours). The Plaintiff, however, is mistaken inasmuch as Law 69 specifically prohibits gender discrimination, *see* P.R. LAWS ANN., tit. 29, § 1323, which is of no relevance herein.

Therefore, as pointed out by the Defendant in its motion for summary judgment, the undisputed facts of this case demonstrate that Maldonado never participated in an activity protected by section 194a of the statute. That is, he did not "offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. LAWS ANN., tit. 29, § 194a. Accordingly, Plaintiff's claim for retaliation pursuant to Law No. 115 is hereby **DISMISSED.**

### 3. Puerto Rico's Wrongful Discharge Statute

■ "Puerto Rico's Law 80 prohibits dismissal of employees without just cause." *Navas v. Multisystems Restaurants, Inc.,* No. 06–2163, 2008 WL 747074, at *10 (D.P.R. March 18, 2008) (*citing Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.,* 152 F.3d 17, 28 (1st Cir.1998)). According to P.R. Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. LAWS ANN. tit. 29, § 185b. The local wrongful discharge statute provides that the following are "just causes" for the termination of an employee:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner; or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

(d) Full, temporary or partial closing of the operations of the establishment.

(e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f) Reductions in employment made necessary by a reduction in the anticipated

or prevailing volume of production, sales or profits at the time of the discharge. P.R. LAWS ANN. tit. 29, § 185b.

In its motion for summary judgment, the Defendant argues that the Plaintiff's termination was the result of the Cooperativa's economic situation, which required a change in its expenses structures and their reduction. *See* Docket No. 43. However, as previously set forth, we are unable to consider the documents attached evincing the Cooperativa's proffered reason due to lack of proper authentication. Therefore, Plaintiff's Law No. 80 claim survives summary judgment and the Defendant's request for dismissal of this claim is **DENIED.**

### 4. Spouse's Derivative Claim for Damages

██ Article 1802 of Puerto Rico's Civil Code imposes liability upon a person for an "act or omission" that "causes damages to another through fault or negligence." P.R. LAWS ANN. tit. 31, § 5141. In order to prevail in a general tort claim under Puerto Rico law, a party must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vazquez–Filippetti v. Banco Popular de Puerto Rico,* 504 F.3d 43, 49 (1st Cir.2007)(*citing Torres v. KMart Corp.,* 233 F.Supp.2d 273, 277–78 (D.P.R. 2002)).

██ The statute of limitations for tort actions pursuant to Article 1802 is one year. P.R. LAWS ANN. tit. 31, § 5298; *see Arturet–Velez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 12 (1st Cir.2005). The one year period begins to run once "the claimant is on notice of her claim; that is, notice of the injury, plus notice of the person who caused it." *Id.* at 14. (internal quotations omitted); *see also Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997).

"Relatives of a victim of employment discrimination have a cause of action for damages under Article 1802 of the Puerto Rico Civil Code." *Montalvo–Leon v. Wyeth Pharmaceuticals Co.,* No. 05–1236, 2007 WL 2905350, *27 (D.P.R. September 24, 2007) (*citing Santini Rivera v. Serv. Air, Inc.,* 137 P.R. Dec. 1, 10 (1994)). The Puerto Rico Supreme Court has referred to these causes of action "as flowing from, or 'contingent upon,' the underlying discrimination claim of the employee, although the cause of action is independently founded in the general tort provision of the civil code (Article 1802) and not in the anti-discrimination laws." *Marcano–Rivera v. Pueblo Intern., Inc.,* 232 F.3d 245, 258 n. 7 (1st Cir.2000) (internal citations omitted). In addition, regarding these claims, "[i]t is well-settled law that the filing of an administrative charge will not toll the running statute of limitations for tort actions, or for violation of rights, provided that an administrative agency, such as the EEOC, does not possess jurisdiction over such controversies." *Montalvo–Leon,* 2007 WL 2905350 at *27 (internal citations omitted).

The Defendant contends in its motion for summary judgment that having Maldonado been dismissed from employment on June 8, 2007, and the federal complaint herein being filed on July 22, 2008, the Article 1802 action would be time-barred since co-plaintiff Aileen Rodriguez and the Conjugal Partnership knew, or should have known, about the termination on the same date it occurred. *See* Docket No. 43 at page 10. The Plaintiffs do not contest this point in their opposition.

In accordance with the applicable law, this Court finds that co-plaintiffs Aileen Rodriguez and the Conjugal Partnership's

contingent claims for damages are time-barred. Therefore, the Defendant's request for the dismissal of these claims is hereby **GRANTED** and these claims are **DISMISSED WITH PREJUDICE.**

## IV. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment (Dockets No. 40–42). Accordingly, Plaintiff's disability-harassment claim pursuant to the ADA, disability claim pursuant to Law No. 44 and retaliation claim under Law No. 115 are hereby **DISMISSED WITH PREJUDICE.** Also dismissed are co-plaintiff Aileen Rodriguez and the conjugal partnership's claims for damages pursuant to Article 1802. Pending before the Court are Maldonado's retaliation claim under ADA, wrongful discharge claim under local Law No. 80 and his damages claim pursuant to Article 1802.

**IT IS SO ORDERED.**