20-1987-cv
*In re: Libor-Based Financial*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of February, two thousand twenty-two.

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

The Berkshire Bank, individually and on behalf of all others similarly situated, Government Development Bank for Puerto Rico,

*Plaintiffs-Appellants*,

FTC Capital GMBH, on behalf of themselves and all others similarly situated, FTC Futures Fund PCC Ltd, on behalf of themselves and all others similarly situated, FTC Futures Fund SICAV, on behalf of themselves and all others similarly situated, Carpenters Pension Fund of West Virginia, City of Dania Beach Police & Firefighters' Retirement System, individually and on behalf of all others similarly situated, Ravan Investments, LLC, Mayor and City Council of Baltimore, Richard Hershey, Jeffrey Laydon, on behalf of himself and all others similarly situated, Schwab Short-Term Bond Market Fund, Schwab Total Bond Market Fund, Schwab U.S. Dollar Liquid Assets Fund, Schwab Money Market Fund, Schwab Value Advantage

Money Fund, Schwab Retirement Advantage Money Fund, Schwab Investor Money Fund, Schwab Cash Reserves, Schwab YieldPlus Fund, Schwab YieldPlus Fund Liquidation Trust, Charles Schwab Bank, N.A., Charles Schwab & Co., Inc., The Charles Schwab Corporation, Metzler Investment GmbH, on behalf of itself and all others similarly situated, Roberto E. Calle Gracey, City of New Britain Firefighters' and Police Benefit Fund, on behalf of itself and all others similarly situated, AVP Properties, LLC, 303030 Trading LLC, Ellen Gelboim, on behalf of herself and all others similarly situated, Atlantic Trading USA, LLC, Community Bank & Trust, 33-35 Green Pond Road Associates, LLC, on behalf of itself and all others similarly situated, Elizabeth Lieberman, on behalf of themselves and all other similarly situated, Todd Augenbaum, on behalf of themselves and all others similarly situated, Gary Francis, Nathaniel Haynes, Courtyard at Amwell II, LLC, Greenwich Commons II, LLC, Jill Court Associates II, LLC, Maidencreek Ventures II LP, Raritan Commons, LLC, Lawrence W. Gardner, on behalf of themselves and all others similarly situated, Annie Bell Adams, on behalf of herself and all others similarly situated, Dennis Paul Fobes, on behalf of himself and all others similarly situated, Leigh E. Fobes, on behalf of herself and all others similarly situated, Margaret Lambert, on behalf of herself and all others similarly situated, Betty L. Gunter, on behalf of herself and all others similarly situated, Carl A. Payne, individually, and on behalf of other members of the general public similarly situated, Kenneth W. Coker, individually, and on behalf of other members of the general public similarly situated, City of Riverside, The Riverside Public Financing Authority, East Bay Municipal Utility District, County of San Mateo, The San Mateo County Joint Powers Financing Authority, City of Richmond, The Richmond Joint Powers Financing Authority, Successor Agency to the Richmond Community Redevelopment Agency, County of San Diego, Guaranty Bank and Trust Company, individually and on behalf of all others similarly situated, Heather M. Earle, on behalf of themselves

and all others similarly situated, Henryk Malinowski, on behalf of themselves and all others similarly situated, Linda Carr, on behalf of themselves and all others similarly situated, Eric Friedman, on behalf of themselves and all others similarly situated, County of Riverside, Jerry Weglarz, Nathan Weglarz, on behalf of plaintiffs and a class, Directors Financial Group, individually, SEIU Pension Plans Master Trust, individually and on behalf of all others similarly situated, Highlander Realty, LLC, Jeffrey D. Buckley, The Federal Home Loan Mortgage Corporation, County of Sonoma, David E. Sundstrom, in his official capacity as Treasurer of the County of Sonoma for and on behalf of the Sonoma County Treasury Pool Investment, The Regents of the University of California, San Diego Association of Governments, CEMA Joint Venture, County of Sacramento, The City of Philadelphia, The Pennsylvania Intergovernmental Cooperation Authority, Principal Funds, Inc., PFI Bond & Mortgage Securities Fund, PFI Bond Market Index Fund, PFI Core Plus Bond I Fund, PFI Diversified Real Asset Fund, PFI Equity Income Fund, PFI Global Diversified Income Fund, PFI Government & High Quality Bond Fund, PFI High Yield Fund, PFI High Yield Fund I, PFI Income Fund, PFI Inflation Protection Fund, PFI Short-Term Income Fund, PFI Money Market Fund, PFI Preferred Securities Fund, Principal Variable Contracts Funds, Inc., PVC Asset Allocation Account, PVC Money Market Account, PVC Balanced Account, PVC Bond & Mortgage Securities Account, PVC Equity Income Account, PVC Government & High Quality Bond Account, PVC Income Account, PVC Short-Term Income Account, Principal Financial Group, Inc., Principal Financial Services, Inc., Principal Life Insurance Company, Principal Capital Interest Only I, LLC, Principal Commercial Funding, LLC, Principal Commercial Funding II, LLC, Principal Real Estate Investors, LLC, Texas Competitive Electric Holdings Company LLC, The Charles Schwab Corporation, National Credit Union Administration Board, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit

3

Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union, Federal National Mortgage Association, Darby Financial Products, Capital Ventures International, Bay Area Toll Authority, Prudential Investment Portfolios 2, formerly known as Dryden Core Investment Fund on behalf of Prudential Core Short-Term Bond Fund, Prudential Core Taxable Money Market Fund, Directors Financial Group, on behalf of all others similarly situated, Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2 Ltd., Triaxx Prime CDO 2007-1, Ltd., The Federal Deposit Insurance Corporation as Receiver, Direct Action Plaintiff, Direct Action Plaintiffs, Salix Capital US Inc., Fran P. Goldsleger, Joseph Amabile, Louie Amabile, Norman Byster, Michael Cahill, Richard Deogracias, Marc Federighi, Scott Federighi, Robert Furlong, David Gough, Brian Haggerty, David Klusendorf, Ronald Krug, Christopher Lang, John Monckton, Philip Olson, Brett Pankau, David Vecchione, Randall Williams, Eduardo Restani, Nicholas Pesa, John Henderson, 303 Proprietary Trading LLC, California Public Plaintiffs, National Asbestos Workers Pension Fund, Pension Trust for Operating Engineers, Hawaii Annuity Trust Fund for Operating Engineers, Cement Masons' International Association Employees' Trust Fund, individually and on behalf of all others similarly situated, Axiom Investment Advisors, LLC, Axiom HFT LLC, Axiom Investment Advisors Holdings L.P., Axiom Investment Company, LLC, Axiom Investment Company Holdings L.P., Axiom FX Investment Fund, L.P., Axiom FX Investment Fund II, L.P., Axiom FX Investment 2X Fund, L.P., Ephraim F. Gildor, Gildor Family Advisors L.P., Gildor Family Company L.P., Gildor Management, LLC, Jennie Stuart Medical Center, Inc., Vistra Energy Corporation, Yale University, Bucks County Water and Sewer Authority, Federal Deposit Insurance, as Receiver for Doral Bank, The Charles Schwab Family of Funds, on behalf of its current or former series Schwab Money Market Fund, Schwab Value Advantage Money Fund, Schwab Retirement

4

Advantage Money Fund, Schwab Investor Money Fund, Schwab Cash Reserves, and Schwab Advisor Cash Reserves, Schwab Investments, on behalf of its former series Schwab Short-Term Bond Market Fund, Schwab Total Bond Market Fund, and Schwab Yieldplus Fund, Charles Schwab Worldwide Funds PLC, on behalf of its series Schwab U.S. Dollar Liquid Assets Fund, Stephanie Nagel, Linda Zacher,

*Plaintiffs*,

v.                                                                                                20-1987-cv

Lloyds Banking Group plc, Royal Bank of Scotland Group PLC, The Norinchukin Bank, WestLB AG, Royal Bank of Canada, WestDeutsche ImmobilienBank AG, British Bankers' Association, BBA Enterprises, Ltd., BBA Libor, Ltd., Lloyds Bank PLC, FKA Lloyds TSB Bank PLC, RBC Capital Markets, Coöperatieve Rabobank U.A., HBOS PLC,

*Defendants-Appellees*,

Bank of America Corporation, Bank of America Home Loans, Barclays Bank PLC, UBS AG, Citibank N.A., Deutsche Bank Financial LLC., Deutsche Bank Securities Inc., Rabobank Group, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A, HSBC Holdings PLC, Barclays Capital Inc., Barclays U.S. Funding LLC, Portigon AG, Lloyds TSB Bank PLC, Credit Suisse Securities (USA) LLC, Credit Suisse International, Credit Suisse Group, NA, Bank of America Securities LLC, Does 1-10, inclusive, J.P. Morgan Clearing Corp., J.P. Morgan Chase & Co., National Association, Citizens Bank of Massachusetts, agent of RBS, Citizens Bank, NA, incorrectly sued as the other Charter One Bank NA, FKA Citizens Bank of Massachusetts, RBS Securities, Inc., RBS Citizens, N.A., The HongKong and Shanghai Banking Corporation Limited, John Does 1-5, Portigon/WestLB AG, ICAP PLC, Bank of Scotland PLC, Barclays Capital (Cayman) Limited,

5

DB Group Services (UK) Limited, UBS Group AG, LLC, Robobank International, Societe Generale S.A., Société Générale, Merrill Lynch Capital Services, Inc., Merrill Lynch Pierce Fenner & Smith, Inc., Merrill Lynch International, HSBC Bank USA, N.A., HSBC Bank PLC, HSBC Securities (USA) Inc., UBS Limited, Citigroup Inc, Citigroup Global Markets Inc., Bank of America, N.A., JPMorgan Chase Bank National Association, J.P. Morgan Securities, LLC, JPMorgan & Co., JPMorgan Chase Bank, UBS Securities LLC, Citigroup Global Markets Limited, Citigroup Funding Inc., HSBC Finance Corp., HSBC USA Inc., Citi Swapco Inc., J.P. Morgan Markets Ltd., Merrill Lynch & Co., Merrill Lynch International Bank, Ltd., Bank of America, National Association, J.P. Morgan Bank Dublin PLC, formerly known as Bear Stearns Bank PLC, Citigroup Financial Products, Inc.,

*Defendants.*[*]

---

FOR PLAINTIFFS-APPELLANTS: JEREMY A. LIEBERMAN (Michael J. Wernke, *on the brief*), Pomerantz LLP, New York, NY.

FOR DEFENDANTS-APPELLEES: PAUL ALESSIO MEZZINA (David S. Lesser, *on the brief*), King & Spalding LLP, Washington, DC (additional counsel for the many parties are listed in Appendix A).

Appeal from the judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this Order.

---

[*] The Clerk of Court is respectfully instructed to amend the caption as set forth above.

This case marks the latest appeal to arise from the multidistrict litigation ("MDL") involving the alleged conspiracy to manipulate the London Interbank Offered Rate ("LIBOR"), an interest rate benchmark used in trillions of dollars' worth of financial instruments throughout the world. Plaintiffs-Appellants, Berkshire Bank and Government Development Bank for Puerto Rico ("GDB"), are banks located in New York and Puerto Rico, respectively, that originated and owned loans with interest rates tied to LIBOR. They allege that Defendants-Appellees—a group of foreign entities that includes banks, those banks' subsidiaries and affiliates, and a United Kingdom-based trade association and its subsidiaries—formed a conspiracy to suppress LIBOR, which caused Plaintiffs-Appellants to receive lower interest rate payments on loans they offered to their customers.

After significant motion practice before the district court, prior appeals to this Court, and additional motion practice following remands to the district court in accordance with this Court's directions, Plaintiffs-Appellants now challenge the judgment of the district court (Buchwald, *J.*) dismissing the fraud and conspiracy-based claims under New York law for lack of personal jurisdiction and the fraud claims under Puerto Rico law as barred by the applicable statute of limitations.

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

## I. **Standard of Review**

"We review a district court's dismissal of an action for want of personal jurisdiction *de novo,* construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d

7

30, 34 (2d Cir. 2010). "A district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed *de novo*." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011).

## II.     Personal Jurisdiction

On appeal, Plaintiffs-Appellants challenge a series of district court decisions which held that it lacked personal jurisdiction over any of Defendants-Appellees because, *inter alia*, Plaintiffs-Appellants failed to show the requisite minimum contacts with the United States, let alone New York, and because Plaintiffs-Appellants' conspiracy theory of personal jurisdiction was inapplicable to their allegations. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11 MDL 2262 (NRB), 2015 WL 6243526, at *19–*20 (S.D.N.Y. Oct. 20, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), No. 11 MDL 2262 (NRB), 2015 WL 6696407, at *8–*9 (S.D.N.Y. Nov. 3, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *9 (S.D.N.Y. Dec. 20, 2016), *aff'd in part, rev'd in part sub nom. Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC* ("*Schwab II*"), 22 F.4th 103 (2d Cir. 2021); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2017 WL 532465, at *3 (S.D.N.Y. Feb. 2, 2017). However, subsequent to the district court's issuance of the decisions at issue in this appeal, this Court decided another appeal arising out of the LIBOR MDL that specifically considered the application of conspiracy-based personal jurisdiction. *See Schwab II*, 22 F.4th at 121. *Schwab II* is instructive for analyzing Plaintiffs-Appellants' specific allegations regarding personal jurisdiction.

For personal jurisdiction to exist: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). As in *Schwab II*, the parties' dispute here centers on the third element and whether Plaintiffs-Appellants' theory of personal jurisdiction based on conspiracy comports with due process. *Schwab II*, 22 F.4th at 121.[1] To satisfy constitutional principles of due process, the district court needed to "determine whether [Defendants-Appellees] ha[d] sufficient minimum contacts with the forum [*i.e.*, New York] to justify the court's exercise of personal jurisdiction." *Waldman*, 835 F.3d at 331. Minimum contacts "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir. 2002)). A defendant can purposefully avail itself of the forum by creating the requisite minimum contacts through actions of a third party such as a co-conspirator because "[m]uch like an agent who operates on behalf of, and for the benefit

---

[1]    As part of the due process analysis regarding personal jurisdiction, in addition to assessing minimum contacts with the relevant forum, a court must also determine whether "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Because the district court found personal jurisdiction lacking under the first prong, it did not address this second prong of the due process analysis. On appeal, Defendants-Appellees reference the second prong only in a cursory footnote with no analysis of the multi-factor reasonableness test applicable to this requirement. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Accordingly, we conclude that Defendants-Appellees have waived any argument on appeal that the second prong is not satisfied. *See, e.g.*, *Tolbert v. Queens Coll.,* 242 F.3d 58, 75 (2d Cir. 2001) ("A contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote."); *accord United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).

9

of, its principal, a co-conspirator who undertakes action in furtherance of the conspiracy essentially operates on behalf of, and for the benefit of, each member of the conspiracy." *Schwab II*, 22 F.4th at 122.

When asserting that personal jurisdiction exists based on a conspiracy, a "plaintiff must allege that: (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.* ("*Schwab I*"), 883 F.3d 68, 87 (2d Cir. 2018). Notably, pursuant to principles of due process, there is no requirement that a plaintiff demonstrate that a defendant "directed, controlled, and/or supervised the co-conspirator who carried out the overt acts in the forum." *Schwab II*, 22 F.4th at 124.

In prior appeals arising from the LIBOR MDL, this Court recognized that there were plausible allegations that a conspiracy existed and that defendants participated in it. *See, e.g.*, *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016). As in *Schwab II*, the parties here contest the third element of the due process analysis for conspiracy-based personal jurisdiction: whether overt acts in furtherance of the conspiracy had sufficient contacts with the relevant forum. In *Schwab II*, this Court looked to whether certain communications among the alleged LIBOR co-conspirators constituted overt acts sufficient to confer personal jurisdiction in the United States as a whole. 22 F.4th at 123. After considering several communications proffered by the plaintiffs, we held in *Schwab II* that "[i]f true, these communications would establish overt acts taken by co-conspirator Banks in the United States in furtherance of the suppression conspiracy, vesting the district court with personal jurisdiction over each Defendant." *Id.*

10

Although the relevant forum in the instant case is New York, rather than the entire United States, *Schwab II* informs our analysis here because several of the critical communications and actions we found sufficient to establish personal jurisdiction in *Schwab II* took place in New York. These include "emails between a senior JPMorgan Chase executive in New York and the Banks' LIBOR submitter discussing the importance of staying in 'the pack' and asking the submitter to 'err on the low side' when setting LIBOR" as well as an alleged admission by "a Barclays' executive who was based in New York . . . that he instructed subordinates to submit artificially low USD LIBOR rates." *Id.* (internal quotation marks omitted). In the instant appeal, Plaintiffs-Appellants cite these same allegations in support of their conspiracy-based theory that personal jurisdiction exists over Defendants-Appellees in New York. *See* Appellants' Br. at 22–24. In addition, Plaintiffs-Appellants' pleadings and other supporting evidence are replete with similar alleged communications and actions that appear to involve purported conspiracy participants located in New York who took steps there to advance the conspiracy. *See, e.g.,* Appellants' Br. at 22–27; Sealed App'x at 37, 39, 50, 52, 57, 64, 66, 69, 76, 77, 79, 84, 85, 87, 93, 94, 649–54, 658.[2] As in *Schwab II*, when considering these allegations in the light most favorable to Plaintiffs-Appellants and assuming that they are true—which we must do at this stage of the litigation—these materials establish plausible allegations of overt acts taken by co-conspirators in New York in furtherance of the conspiracy. Thus, these allegations were sufficient to vest the district court with personal jurisdiction over each Defendant-Appellee.

---

[2] We need not analyze whether every purported act or communication proffered by Plaintiffs-Appellants "amount[s] to overt conspiratorial acts in the forum" because the ones detailed above sufficiently allege overt acts in New York. *Schwab II*, 22 F.4th at 123 n.9.

11

In supplemental briefing submitted after *Schwab II*, Defendants-Appellees argue that, although *Schwab II* held that constitutional standards of due process do not require Plaintiffs-Appellants to demonstrate that Defendants-Appellees directed, controlled, or supervised their co-conspirators in New York to confer conspiracy-based personal jurisdiction there, New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(2), does impose such a requirement.[3]   As we explained in *Schwab I*, the due process and long-arm analyses regarding personal jurisdiction are related because "[a]lthough the long-arm statute and the Due Process Clause are not technically coextensive, the New York requirements (benefit, knowledge, some control) are consonant with the due process principle that a defendant must have 'purposefully availed itself of the privilege of doing business in the forum.'"   *Schwab I*, 883 F.3d at 85 (quoting *Bank Brussels*, 305 F.3d at 127).

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state."   N.Y. C.P.L.R. § 302(a)(2).   As New York courts have long recognized, allegations of a conspiracy can satisfy the statute and a co-conspirator can be considered an agent so that "[t]he acts of a co-conspirator may, in an appropriate case, be attributed to a defendant for the purpose of obtaining personal jurisdiction over that defendant."   *Reeves v. Phillips*, 388 N.Y.S.2d 294,

---

[3]   Plaintiffs-Appellants argue that Defendants-Appellees failed to raise this argument properly before the district court and have therefore waived it on appeal.   Appellants' Reply Br. at 3.   Although the district court never reached this precise argument regarding the application of New York's long-arm statute to a conspiracy-based theory of personal jurisdiction, Defendants-Appellees did raise it in their July 6, 2016 brief in support of their motion to dismiss. J. App'x at 1869–70 ("In New York and Minnesota, Plaintiffs must allege that a defendant exercised direction or control over the co-conspirator to impute the co-conspirator's contacts—a standard that, for the reasons outlined above, is necessary to satisfy due process. . . . Because Plaintiffs have made no such allegations, . . . Plaintiffs' conspiracy allegations are deficient under those states' long-arm statutes.").   Accordingly, we will address Defendants-Appellees' long-arm argument on the merits.

12

296 (1st Dep't 1976); *see also Travelers Indem. Co. v. Inoue*, 490 N.Y.S.2d 506, 507 (1st Dep't 1985) (same).

To establish conspiracy-based personal jurisdiction pursuant to New York's long arm statute, a plaintiff must—after making a *prima facie* showing of a conspiracy—plausibly allege that: "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, *or* at the request of or on behalf of the out-of-state defendant." *Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 7 (1st Dep't 2013) (emphasis added) (quoting *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000)). This third element can be established by, for example, a co-conspirator being "aware of the torts being committed by . . . defendants in New York" while not necessarily "directing [a defendant] to commit tortious acts in New York." *Id.* at 8. In other words, New York courts do not mandate a showing of control or direction to establish conspiracy-based personal jurisdiction. *See, e.g.*, *Am. Broad. Cos. v. Hernreich*, 338 N.Y.S.2d 146, 148 (1st Dep't 1972).

As described earlier as part of our analysis regarding due process, Plaintiffs-Appellants have sufficiently alleged that certain co-conspirators acted as agents of their co-conspirators in New York and took steps in furtherance of the alleged conspiracy at the request of or on behalf of their co-conspirators. Accordingly, "[b]y joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York," Defendants-Appellees purposely availed themselves "of the privilege of conducting activities within [New York]."

13

*Lawati*, 961 N.Y.S.2d at 8 (citation omitted) (quoting *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 585 (E.D.N.Y. 1998)).

Thus, Plaintiffs-Appellants' allegations satisfy the requirements of personal jurisdiction both under principles of due process and under New York's long-arm statute.

### III.   Statute of Limitations

With respect to GDB's fraud claims, we conclude that the district court erred in dismissing such claims as time-barred under Rule 12(b)(6).   Under New York's borrowing statute, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the claim must be timely under both the New York statute of limitations and the statute of limitations of the jurisdiction where the cause of action accrued.[4]   *See* N.Y. C.P.L.R. § 202; *Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 27–28 (1984).   The parties agree that the fraud claims accrued where GDB is domiciled—that is, Puerto Rico—and that the applicable statute of limitations under Puerto Rico law is one year "from the time the aggrieved person had knowledge thereof."   P.R. LAWS ANN. Tit. 31, § 5298(2) (1930).   This statutory period begins to run only when "the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit."   *Alejandro-Ortiz v. P.R. Elec. Power Auth.* ("*PREPA*"), 756 F.3d 23, 27 (1st Cir. 2014) (quoting *Villarini-García v. Hosp. Del Maestro, Inc.*, 8 F.3d 81, 84 (1st Cir. 1993)).   A plaintiff is not required to undertake an investigation if he is unaware of the injury and the person who caused such injury.   *See Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 14 (1st Cir. 2005) (the one-year period begins to run once "the claimant is on notice of her claim—that is,

---

[4]  Here, Defendants-Appellees do not argue that the claims are untimely under New York law.

14

notice of the injury, plus notice of the person who caused it." (internal quotation marks omitted)).

In the instant case, we cannot determine, at the motion to dismiss stage, whether GDB was aware of any potential injury that should have prompted it to investigate the claims prior to November 21, 2011—one year before initiating the instant lawsuit. Just as the defendants did in *Schwab I*, Defendants-Appellees here point to certain public information related to the LIBOR conspiracy that they contend would have given GDB sufficient knowledge to bring suit. Specifically, they identify allegations in the complaint regarding press reports, as early as May 2008, about an apparent discrepancy in the panel banks' USD LIBOR submissions, as well as disclosures by UBS in its March 2011 Annual Report that it had received subpoenas from the United States Commodity Futures Trading Commission and the Department of Justice in connection with an investigation into LIBOR.[5] *See* Appellees' Supp. Br. at 10; *see also* J. App'x at 1175, 1199, 1218–19.

Though not based on the law of Puerto Rico, *Schwab I* analyzed this same information and found it insufficient in April 2011 to have led a "reasonable investor to investigate the possibility of fraud" because there was still a material dispute over whether such an investor "had all the information necessary to set forth its claims in sufficient detail." *Schwab I*, 883 F.3d at 95 (internal quotation marks omitted). Although the relevant date here is six months later than in *Schwab I*, it is still unclear from the complaint (including the media reports and other documents incorporated by reference) that, by November 2011, GDB "possesse[d], or with due diligence

---

[5] On a motion to dismiss under Rule 12(b)(6), a court may consider "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken." *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993). Thus, these documents, incorporated by reference in the complaint, are properly considered here.

would possess, information sufficient to permit suit." *PREPA*, 756 F.3d at 27. Taking the facts as alleged and drawing all inferences in GDB's favor, we conclude, as we did in *Schwab I*, that "[i]t is too soon to identify . . . the precise moment at which the [one]-year limitations period began to run." 883 F.3d at 95. Accordingly, GDB's fraud claims cannot be dismissed as time-barred under Rule 12(b)(6).

\*   \*   \*

We have reviewed Defendants-Appellees' remaining arguments and find them to be without merit. Accordingly, we **REVERSE** the judgment of the district court, and **REMAND** for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16

**Appendix A**

*Additional Counsel for Plaintiffs-Appellants on the Brief*:

Veronica V. Montenegro, Pomerantz LLP, New York, NY; Patrick V. Dahlstrom, Pomerantz LLP, Chicago, IL.

*Additional Counsel for Defendants-Appellees on the Brief*:

David S. Lesser, Jamie S. Dycus, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *for Defendant-Appellee The Royal Bank of Scotland Group plc (n/k/a NatWest Group plc).*

Richard D. Owens, Jeff G. Hammel, Lilia B. Vazova, Latham & Watkins LLP, New York, NY, *for Defendants-Appellees British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd.*

David R. Gelfand, Robert C. Hora, John J. Hughes, III, Milbank LLP, New York, NY, Mark D. Villaverde, Milbank LLP, Los Angeles, CA, *for Defendant-Appellee Coöperatieve Rabobank U.A.*

Marc J. Gottridge, Lisa J. Fried, Benjamin A. Fleming, Hogan Lovells US LLP, New York, NY, *for Defendants-Appellees Lloyds Banking Group plc, Lloyds Bank plc (f/k/a Lloyds Bank TSB plc), and HBOS plc.*

Andrew W. Stern, Tom A. Paskowitz, Peter J. Mardian, Sidley Austin LLP, New York, NY, *for Defendant-Appellee The Norinchukin Bank.*

Christopher M. Paparella, Steptoe & Johnson LLP, New York, NY, *for Defendants-Appellees Portigon AG (f/k/a WestLB AG) and Westdeutsche Immobilien Servicing AG (f/k/a Westdeutsche ImmobilienBank AG).*

Christian T. Kemnitz, Brian J. Poronsky, J Matthew Haws, Katten Muchin Rosenman LLP, Chicago, IL, Robert T. Smith, Katten Muchin Rosenman LLP, Washington, DC, *for Defendant-Appellee Royal Bank of Canada.*

17